# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

**GABRIELLE WILLIAMS,**

      Plaintiff,

Case No. 2:17-cv-11381-SJM-EAS

v.

Hon. Stephen J. Murphy III

**OAKWOOD HEALTHCARE, INC.,**
**d/b/a BEAUMONT HOSPITAL – DEARBORN,**
**a Michigan non-profit corporation**

      Defendant.

_____/

## MOTION FOR SUMMARY JUDGMENT

NOW COMES the Defendant, by and through its counsel, and for its Motion for Summary Judgment relies upon the Corrected Brief in Support of Motion filed concurrently with this Motion.

Concurrence of counsel for Plaintiff to the relief requested herein was sought but was not obtained and hence it is necessary to bring the Motion on for hearing.

      Respectfully submitted,

      BUTZEL LONG,
      *a professional corporation*

      By:  /s/ Rebecca S. Davies
            Rebecca S. Davies (P52728)
      Attorney for Defendant

June 8, 2018

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

**GABRIELLE WILLIAMS,**

 Plaintiff,

 Case No. 2:17-cv-11381-SJM-EAS

v.

 Hon. Stephen J. Murphy III

**OAKWOOD HEALTHCARE, INC.,**
**d/b/a BEAUMONT HOSPITAL – DEARBORN,**
**a Michigan non-profit corporation**

 Defendant.

_____/

## CORRECTED BRIEF IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

## INDEX OF EXHIBITS

Rebecca S. Davies (P52728)
BUTZEL LONG, *a professional corporation*
41000 Woodward Avenue – Stoneridge West
Bloomfield Hills, I 48304
313.225.7028 / 248.258.1439
davies@butzel.com
Attorney for Defendant

# **Table of Contents**

Table of Authorities ................................................................ iii

Questions Presented ................................................................vi

**Introduction** ...................................................................1

**Statement of Relevant Facts** ...................................................1

  1. Plaintiff's Employment History .......................................1

  2. Relevant Employment Policies .........................................2

  3. The Doll Incident ...................................................3

  4. The Hospital's Prompt and Remedial Actions ...........................5

  5. Plaintiff's Termination .............................................6

**Legal Argument** .................................................................7

  A.  Plaintiff's Count I WPA Claim Should Be Dismissed Because It Is Without Legal Or Factual Merit ..........................................7

    1. Plaintiff Cannot Demonstrate A *Prima Facie* Case Under The WPA As She Cannot Demonstrate By Clear And Convincing Evidence That That She Reported or Was About To Report To a Public Body ........................8

    2. Plaintiff Cannot Demonstrate The Required Causal Connection Necessary to Establish a Prima Facie Case Under the WPA .....................10

  B.  Plaintiff's Count II Hostile Work Environment Claim Should Be Dismissed Because It Is Without Legal Or Factual Merit ...........................13

    1. This Court is Without Subject Matter Jurisdiction to Consider Plaintiff's Hostile Work Environment Claim .......................................14

    2. Plaintiff Cannot Rely On An Incident Which Occurred In 2015 To Demonstrate A Hostile Work Environment As She Had Never Seen The Posting Until The Discovery Phase Of This Lawsuit In 2018, The Claim Is Untimely And Plaintiff Failed To Report The Issue ...........................16

i

3. One Act, Not Directed To Plaintiff And Not Offensive To The Person To Whom It Was Directed, Cannot Be Considered To Be Sufficiently Severe Or Pervasive To Support A Claim Of Hostile Work Environment. .........19

C. Plaintiff's Discrimination Claims in Counts III and IV Should Be Dismissed Because They Are Without Legal Or Factual Merit .......................................21

1. The Plaintiff Cannot Demonstrate a *Prima Facie* Case As She Was No Longer Qualified To Serve as a Phlebotomist .........................................22

2. The Hospital Lawfully Disciplined and Terminated the Plaintiff for Legitimate, Non-Discriminatory Reasons .................................................23

D. Plaintiff Is Not Entitled To Front Pay Damages ............................................25

**Conclusion.............................................................................................................25**

# Table of Authorities

## CASES

*Amersino Marketing Group LLC*, 351 NLRB 1055; 183 LRRM 1028 (2007) ......**24**

*Ang v. Procter & Gamble Co.,* 932 F.3d 540 (C.A. 6 1991) .................................**14**

*Berry v. Delta Airlines*, 260 F.3d 803 (C.A. 7 2001) ............................................**20**

*Bolish v. Miller Park Townhomes LLC*,
    2014 W.L. 60329 (Mich. App. 2014) ...........................................................**12**

*Brown v. City of Cleveland*, 294 Fed. Appx. 226 (C.A. 6 2008) ...........................**15**

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742; 118 S. Ct. 2257;
    141 L.Ed.2d 663 (1998) ........................................................................**18, 19**

*Burnett v. Tyco Corp.*, 203 F.3d 980 (C.A. 6 2000*; cert denied* 531 U.S. 928;
    121 S. Ct. 307; 148 L.Ed.2d 246 (2000) ....................................................**20**

*Chacko v. Patuxent Inst.*, 429 F.3d 505 (C.A. 4 2005) ..........................................**15**

*Chambers v. Trettco*, 463 Mich. 297; 614 N.W. 2d 910 (2000) ......................**18, 19**

*Chandler v. Dowell Schlumberger, Inc.*, 456 Mich 395;
    572 N.W.2d 210 (1988) ...............................................................................**8, 9**

*Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497 (C.A. 7 1994) ...............**15**

*Clay v. United Parcel Service, Inc.*, 501 F.3d 695 (C.A. 6 2007) .........................**21**

*Dale v. Chicago Tribune Co.*, 797 F.2d 458 (C.A. 7 1986);
    *cert. denied* 479 U.S. 1066 (1987) .............................................................**22**

*Del. State Coll. v. Ricks,* 449 U.S. 250, 101 S. Ct. 498, 66 L.Ed.2d 431 (1980) ...**17**

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) .........................................**20**

*Ferguson v. Veterans Administration*, 723 F.2d 871 (C.A. 11 1984) ...................**21**

*Freeman v. Ace Tel. Ass'n.*, 467 F.3d 695 (C.A. 8 2006) .......................................**13**

*Grebin v. Sioux Fall Indep. Sch. Dist. No. 49-5*,
  779 F.2d 18 (C.A. 8 1985) .......................................................................**22**

*Harris v. Forklift Sys. Inc.,* 510 U.S. 17; 114 S. Ct 367;
  126 L.Ed.2d 295 (1993) .......................................................................**19**

*Higgins v. Newhouse*, 54 FEP Cases 1235 (E.D. Mich. 1989) ...............................**23**

*Huhn v. Koehring*, 718 F.2d 239 (C.A. 7 1983) .....................................................**23**

*In re Martin*, 450 Mich. 204; 538 N.W. 2d 399 (1995) .........................................**10**

*Jennings v. County of Washtenaw*, 475 F. Supp 2d 692 (E.D. Mich. 2007) .........**10**

*Jones v. City of Allen Park*, 167 Fed. Appx. 398 (C.A. 6 2006) ...........................**10**

*Jordan v. Alternative Resources Corp.*, 458 F.3d 332 (C.A. 4 2006) ...................**21**

*Kaufman & Payton, P.C. v. Nikkila*, 200 Mich. App. 250;
  503 N.W. 2d 728 (1993) .........................................................................**9**

*Kephart v. Institute of Gas Technology*, 630 F.2d 1217 (C.A. 7 1980) .................**22**

*Kiel v. Select Artificials, Inc.*, 169 F.3d 1131 (C.A. 8 1999) ................................**24**

*Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618; 127 S. Ct. 2162;
  167 L.Ed.2d 982 (2007) .......................................................................**20**

*Leugers v. Pinkerton Security and Investigative Services*, 2000 U.S. App.
  LEXIS 1831 (C.A. 6 2000) ...................................................................**18**

*Lucas v. Dover Corp., Norris Div.*,
  857 F.2d 1397 (C.A. 10 1988) ................................................................**22**

*McDonalds v. Union Camp Corp.*, 898 F.2d 115 (C.A. 6 1990) ..........................**23**

*Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274;
  97 S.Ct. 568; 50 L.Ed. 2d 471 (1977) .......................................................**11**

*National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101;
  122 S.Ct. 2061; 153 L.Ed.2d 106 (2002) ...................................................**17**

*Oncale v. Sundowner Offshore Serv.*, 523 U.S. 75 (1998) ....................................**20**

*Patterson v. County of Fairfax*, 2000 U.S. App LEXIS 11009 (C.A. 4 2000) .......**20**

*Radtke v. Everett*, 442 Mich. 368, n.44 (1993)  ......................................................**18**

*Robinson v. Radian, Inc.*, 642 F. Supp. 2d 617 (E.D. Mich 2008),
    *recons. den.* 2008 W.L. 2064552 (C.A. 6 2008)  ..............................................**7**

*Rose-Maston v. NME Hospitals*, 133 F.3d 1104 (C.A. 8 1998) ...........................**22**

*Schrand v. Federal Pacific Electric Company*, 851 F.2d 152 (C.A. 6 1988) .........**25**

*Scott v. Eastman Chem. Co.*, 275 F. App'x 466 (C.A. 6 2008) ..............................**15**

*Shallal v. Catholic Social Svs. of Wayne Co.*, 455 Mich. 604;
    566 N.W. 2d 571 (1997) ..................................................................................**8**

*Strouss v. Michigan Dep't. of Corrs.*, 250 F.3d 336 (C.A. 6 2001)  ......................**14**

*Sussberg v. K-Mart Holding Corp.*, 463 F. Supp. 2d 704 (E.D. Mich. 2006) ........**12**

*Taylor v. Modern Engineering, Inc.*, 252 Mich. App. 655;
    653 N.W. 2d 625 (2002) ..................................................................................**12**

*Vore v. Indiana Bell Tel. Co.,* 32 F.3d 116 (C.A. 7 1994)  .....................................**20**

*Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463 (C.A. 6 2012) .........................**12**

*West v. General Motors Corp.*, 469 Mich. 177; 665 N.W. 2d 468 (2003) .............**11**

*Williams v. General Motors Corp.*, 187 F.3d 553 (C.A. 6 1999)  ..........................**19**

*Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359 (C.A. 6 2010) ..............................**15**

## STATUTES

MCL §15.363(4) .......................................................................................................**10**

29 U.S.C. §626(d)(2) ...............................................................................................**17**

<u>**QUESTIONS PRESENTED**</u>

1.  Should this Court dismiss Plaintiff's WPA claim because she cannot demonstrate by clear and convincing evidence that she reported or was about to report to a public body?

    **Defendant answers "Yes."**

2.  Should this Court dismiss Plaintiff's WPA claim because she cannot demonstrate the required causal connection as Defendant lacked any knowledge that it was Plaintiff who complained as the October 2016 Facebook Posting was made under a fictitious name?

    **Defendant answers "Yes."**

3.  Should this Court dismiss Plaintiff's WPA claim as temporal proximity alone does not demonstrate a causal connection?

    **Defendant answers "Yes."**

4.  Should this Court dismiss Plaintiff's WPA claim as intervening issues involving the Plaintiff breaks any causal connection?

    **Defendant answers "Yes."**

5.  Is this Court without subject matter jurisdiction to consider Plaintiff's hostile work environment claims as these claims were not previously raised in the prior EEOC Charges?

    **Defendant answers "Yes."**

6.  Should this Court dismiss Plaintiff's hostile work environment claims based upon a social media posting which occurred in 2015 as Plaintiff never saw the posting until this lawsuit in 2018, the claim is untimely and Plaintiff failed to report the issue to the Hospital?

    **Defendant answers "Yes."**

7.  Should this Court dismiss Plaintiff's hostile work environment claim as one act, not directed to Plaintiff and not offensive to the person to whom is was directed, cannot be considered to be sufficiently severe or pervasive to support a claim of hostile work environment?

    **Defendant answers "Yes."**

8.    Should this Court dismiss Plaintiff's race discrimination as she was no longer qualified to serve as a phlebotomist?

    **Defendant answers "Yes."**

9.    Should this Court dismiss Plaintiff's race discrimination claims as the Hospital lawfully disciplined and terminated the Plaintiff for legitimate, non-discriminatory reasons?

    **Defendant answers "Yes."**

10.   Should this Court limit Plaintiff's damages because of after-acquired evidence?

    **Defendant answers "Yes."**

## INTRODUCTION

The lawsuit filed by Plaintiff Gabrielle Williams ("Plaintiff") is essentially premised on one incident: when a doll was colored by one employee and presented to another employee. Plaintiff uses inflammatory labels of "Sambo doll" and "black faced doll" in attempt to make this incident more than what it was intended. Instead, the evidence demonstrates that the doll was intended as a joke between co-workers, co-workers that had a prior personal relationship. The doll was not given to Plaintiff nor intended for her. Plaintiff was not personally present when either the doll was created or presented. Indeed, she did not even work the same shift as the other employees. Based on this one incident, Plaintiff makes numerous unfounded allegations against Defendant Oakwood Healthcare, Inc. ("Hospital") including alleged violations of Michigan Whistleblower Protection Act (Count I); a Title VII hostile work environment claim (Count II); and racial discrimination under Title VII (Count III) and Elliott-Larsen Civil Rights Act (Count IV). As demonstrated below, these claims are without legal or factual merit and should be summarily dismissed.

## STATEMENT OF RELEVANT FACTS

**1.    Plaintiff's Employment History**

In her Complaint, Plaintiff alleges that she "performed her duties in exemplary fashion, without significant reprimands or other disciplinary action." (**ECF 1**, Para.

1

13). However, the following summary, along with the supporting documentation, demonstrates that Plaintiff was less than "exemplary":

| | |
|---|---|
| 5/23/13 | Corrective Action: incorrectly registered patient (**Ex. 1**). |
| 10/14/13 | Incident: mislabeled samples/major error(refused to sign)(**Ex. 2**). |
| 11/15/13 | Corrective Action: sending unprofessional e-mail (**Ex. 3**). |
| 8/21/15 | Counseling: inappropriate technique for baby (**Ex. 4**). |
| 10/19/15 | Corrective Action: left tourniquet on the arm (**Ex. 5**). |
| 11/24/15 | Corrective Action: excessive tardies/attendance (**Ex. 6**). |
| 11/29/15 | Incident Reported by Plaintiff: complaint she was rude to nurse (**Ex. 7**). |
| 12/14/15 | Incident: incorrect labeling (**Ex. 8**). |
| 4/12/16 | Incident: gave baby pacifier contrary to mother's request (**Ex. 9**). |
| 4/18/16 | Incident: left tourniquet on patient (**Ex. 10**). |
| 5/18/16 | Corrective Action: excessive tardies/attendance (**Ex. 11**). |
| 6/16/16 | Corrective Action: 3-Day Suspension for verbal altercation with patient's granddaughter (**Ex. 12**). |
| 8/11/16 | Incident: did not complete all draws and left early without notice (**Ex. 13**). |
| 11/27/16 | Incident: did not timely draw blood/hung up on nurse (**Ex. 14**). |
| 12/7/16 | Incident: failed to answer phone for 30 minutes (**Ex. 15**). |
| 1/17/17 | Incident: in cafeteria one hour after arrival but draws were not completed (**Ex. 16**). |
| 1/19/17 | Incident: attempted to draw blood from wrong person and then misrepresented herself as Nicole (**Ex. 17**). |

These repeated issues demonstrate that Plaintiff's was not "exemplary".

## 2.    Relevant Employment Policies

The Hospital's Equal Employment Opportunity policy provides that "all employees have the right to work in an environment free from discrimination, which

encompasses freedom from harassment." (**Ex. 18**, EEO Policy). The policy also encourages employees to report any act of discrimination. (**Ex. 18**). The Hospital also has a Disruptive Behavior and/or Harassment Policy which prohibits disruptive behavior and/or harassment. (**Ex. 19**, Disruptive Behavior and/or Harassment Policy). It provides that the employee should "immediately report such incidents to their supervisor, the Site Human Resources Manager/Director, or the Senior Vice President, Human Resources." (**Ex. 19**, p. 3). In addition, the Hospital's Problem Resolution Procedures sets a detailed five-step procedure to address an employee's concern, problem or complaint. (**Ex. 20**, Problem Resolution Procedure).

### 3.    The Doll Incident

In October 2016, a doll was colored by one employee and presented to another employee, Darrin Johnson ("the Darrin doll"). (**Ex. 21**, Photograph Anonymously Posted). The Hospital learned of this through a posting on the Hospital's Facebook page by a fictitious name which included pictures of the Darrin doll as allegedly displayed in the Hospital's laboratory. (**Ex. 22**, E-Mail Notification of Posting).

The Hospital thoroughly investigated the facts surrounding the Darrin doll (**Ex. 23**, Summary of Investigation) but never learned of who made the posting, who made the doll, or who took the doll. (**Ex. 24**, Wesolek Deposition, p. 50:11-25 and 51:1-10). Through this litigation, however, the answers to all of these questions were revealed.

3

Unbeknownst to the Hospital, Plaintiff admitted that she made the anonymous post under the name of "Angela Speed" to the Hospital's Facebook page on October 4, 2016. (**Ex. 25**, Plaintiff's Deposition, Part 2, ps. 40:24-25–41:1-20). Plaintiff further admitted that she took the doll (although failed to previously disclose same in Initial Disclosures or in discovery answers). (**Ex. 25**, Part 2, p. 33:7-12).

Additionally, Alicia Ososkie admitted that she made the doll for Darrin Johnson (**Ex. 26**, Ososkie's Deposition, p. 16:21-25 and 17:1-4)) but did never told anybody that made it (**Ex. 26**, p. 33:24-25 and 34:12)). Alicia testified that she had seen other dolls decorated with different genders, national origins and clothing (**Ex. 26**, p. 18:5-9) and meant this only as a joke (**Ex. 26**, p. 18:5-9). Alicia further testified that the doll in the picture (**Ex. 21**) was altered from how she made the doll as she did not add the white eyes, the coloration to the lips or anything on the shoes. (**Ex. 26**, p. 16:21-25 and 17:1-4)). Darrin Johnson likewise testified that the doll in the picture (**Ex. 21**) was "definitely changed" and "whoever took this doll changed the whole mouth and made the mouth white all around". (**Ex. 26**, p. 21:2-25).

As testified by Ms. Ososkie and others, the Darrin doll was not the first time one of the Hospital's squishy healthcare dolls was changed. However, Plaintiff never took pictures of those other dolls and never made any report to Human Resources, her supervisor, or management about the other dolls. (**Ex. 25**, Part 2, p. 37:1-11).

Indeed, Plaintiff testified she was not offended by the other dolls that had altered appearances. (**Ex. 25**, Part 2, p. 37:12-13).

The fact that the doll had the name "Darrin" written on it demonstrates that it was intended for Darrin Johnson, not Plaintiff.  As demonstrated by the deposition testimony, Darrin liked the doll. (**Ex. 27**, p. 21:18-25 ("I liked the doll … I called it a little mini-me")). Despite Plaintiff's attempts to label the doll as something offensive, Darrin Johnson testified that "it's not a Sambo Doll" but "it was a doll that was colored with my name on it, a doll that was a nurse before that was still colored a nurse.  I had on blue scrubs that day." (**Ex. 27**, p. 41:8-14). Darrin Johnson did not find the doll offensive and did not believe others did either. (**Ex. 27**, p. 50:13-21 ("It wasn't inappropriate to me. Why would I assume that it would be inappropriate to anyone else. Had I known that the doll was inappropriate to someone at the time the doll was there, then I would have moved it.  No one said that the doll was offending them at all while the doll was there to me".)).

Finally, Plaintiff's Complaint alleges that the doll was there "for an extended period of time in 2016 and 2017".  (**ECF 1**, Para. 11).  However, even Plaintiff has testified that this doll was displayed for a few days.  Specifically, Plaintiff testified that she first saw the doll in the beginning of October 2016 (**Ex. 25**, Part 2, p. 32:3-7) and that she removed the doll on October 3, 2016 (**Ex. 25**, Part 2, p. 33:7-12).

**4.     The Hospital's Prompt and Remedial Actions**

In response to the anonymous posting on the Hospital's Facebook page in October 2016, the Hospital sprang into action by creating an action plan.  (**Ex. 28**, Action Plan).  This plan included multiple steps, including the following:

(1)     Interviewing lab leadership;

(2)     Interviewing Darrin Johnson;

(3)     Sweeping floors to ensure no other dolls are present;

(4)     Requiring training for all phlebotomy employees (**Ex. 29**, Promoting Positive Teamwork Training);

(5)     HR met with the lab employees during their huddle and also requested them to  complete the new "Diversity in Workplace" module in November (**Ex. 30**, HR   Department Visits)

(6)     Requiring training for lab supervisors and managers (**Ex. 31**, Preventing Unlawful Harassment);

(**Ex. 28** and **Ex. 32,** Chronology).  After conducting the investigation, the Hospital was not satisfied with how the supervisor, Janice Davis, failed to personally handle and follow-up on the doll incident and as such, Ms. Davis received a discipline.  (**Ex. 33**, Janice Davis discipline).  Indeed, the Hospital progressed to the second step of the discipline process even though Ms. Davis had no prior discipline.  (**Ex. 33**).

**5.     Plaintiff's Termination**

Almost four months after the anonymous Facebook post, a report was made to Human Resources that Plaintiff sent a harassing and offensive message to Darrin Johnson's wife, Eboni Johnson, who is now deceased.  (**Ex. 34**, Shannon Wojcik Notes and **Ex. 35**, Message). Human Resources suspended Plaintiff while it

conducted an investigation. (**Ex. 36**, Corrective Action). The Hospital's thorough

investigation (**Ex. 37**, Chronology) revealed the following:

- Plaintiff posted a private post on her Facebook account (**Ex. 38**).

- A co-worker shared this message with Darrin and he responded on Facebook (**Ex. 39**).

- Darrin was then blocked then was blocked by Plaintiff (**Ex. 39**) and he reached out to those persons who previously commented about Plaintiff's post.

- Upset that Darrin responded directly to others, Plaintiff sent the harassing message to Eboni Johnson (**Ex. 35**).

The Hospital concluded Plaintiff's conduct was a violation of its harassment policy:

> Because a co-worker (D.J.) disagreed with her on a workplace issue, employee intentionally sought out a co-worker's wife on social media for the purpose of harassing the wife and co-worker D.J. by revealing personal information about the D.J.'s behavior and personal relationship with co-workers.

(**Ex. 40**, Corrective Action). As Plaintiff's prior step of discipline was a suspension

(**Ex. 12**), the next step in the progressive discipline was termination. (**Ex**. 40).

## LEGAL ARGUMENT

### A. Plaintiff's Count I WPA Claim Should Be Dismissed Because It Is Without Legal Or Factual Merit.

Actions under the WPA are analyzed using the "shifting burdens" framework

utilized in retaliatory discharge actions under Michigan's Elliott–Larsen Civil Rights

Act ("ELCRA"). *Robinson v. Radian, Inc.,* 624 F. Supp. 2d 617, 627 (E.D. Mich.

2008), *recons. den.* 2008 W.L. 2064552 (C.A. 6 2008). Under that framework, the

plaintiff bears the initial burden of establishing a *prima facie* case. *Id.* If the plaintiff

establishes a *prima facie* case, the burden shifts to the defendant to articulate a

legitimate nondiscriminatory reason for the challenged action. *Id.* If the defendant produces evidence establishing the existence of a legitimate reason for the discharge, the plaintiff then has the opportunity to prove that the legitimate reason offered by the defendant was not the true reason, but was only pretext. *Id.*

To establish a *prima facie* case under the WPA, the plaintiff must show that: (1) she was engaged in protected activity; (2) was subsequently discharged, threatened, or otherwise discriminated against; and (3) a causal connection exists between the protected activity and the adverse action. *Chandler v. Dowell Schlumberger, Inc.*, 456 Mich. 395, 399; 572 N.W. 2d 210 (1998). Here, however, Plaintiff cannot demonstrate the required elements of a *prima facie* case.

### 1. Plaintiff Cannot Demonstrate A *Prima Facie* Case Under The WPA As She Cannot Demonstrate By Clear And Convincing Evidence That That She Reported or Was About To Report To a Public Body.

An employee is engaged in a protected activity under the WPA if she has reported, or is about to report, a suspected violation of law to a public body. *Shallal v. Catholic Social Svs. of Wayne Co.*, 455 Mich. 604, 610; 566 N.W. 2d 571 (1997). Here, Plaintiff cannot demonstrate this first required element. Indeed, Plaintiff did not even plead in her Complaint that she reported or was about a suspected violation to a public body. (**ECF 1**, Para. 13). In addition, Plaintiff admits that she did not report or was about to report to a public body during her employment.

The WPA's protections only apply to an employee who "reports or is about to report" to a public body. MCL §15.362.  Even ignoring the fact that the posting to the Hospital's Facebook page was made by fictitious name (which will be later addressed in the causal connection argument), a posting to the Hospital does not entitle Plaintiff to protections under the WPA. *Chandler*, 456 Mich. at 399 (A threat to report to an internal corporate compliance body or even such a report cannot trigger the protection of the "about to report" language of the statute, because the WPA does not apply if a plaintiff reports a violation "only to his employer, not to a public body.").

Further, Plaintiff never made any report to an outside party while employed. (**Ex. 25**, Part 2, p. 61:4-25). Instead, it was only <u>after</u> being terminated that Plaintiff filed a claim with the EEOC.  (**Ex. 25**, Part 2, p. 62:1-4).  Not only was this an after-the-fact reporting to the EEOC, it was only about her termination and not necessarily about the doll.  (**Exs. 41 and 42**, 2/13/17 EEOC Charge and 3/8/17 EEOC Charge).

In order to successfully allege whistleblower retaliation, a plaintiff must show, with clear and convincing evidence, that the employer had objective notice of the threat to make a complaint to an outside agency. *Kaufman & Payton, P.C. v. Nikkila*, 200 Mich. App. 250, 257; 503 N.W. 2d 728 (1993).  Here, however, Plaintiff testified that she never complained about the doll to an outside public agency. (**Ex. 25**, Part 2, 61:4-25 and 62:1-4).

9

The WPA specifically requires "clear and convincing evidence." *Jennings v. County of Washtenaw*, 475 F. Supp. 2d 692, 712 (E.D. Mich. 2007) (citing MCL §15.363(4)). In opposing a motion for summary judgment, "any heightened burden of proof required by the substantive law for an element … must be satisfied" by the plaintiff. *Id.* The Michigan Supreme Court has recognized that the "clear and convincing evidence standard" is "the most demanding standard applied in civil cases." *See, In re Martin,* 450 Mich. 204, 226-27; 538 N.W. 2d 399 (1995). *"*A single unsubstantiated, uncorroborated deposition statement by the plaintiff" does not satisfy the evidentiary burden under the WPA to show by "clear and convincing evidence" that the plaintiff was about to report a suspected violation to a public body before being terminated. *Jennings*, 475 F. Supp. at 712.

Here, Plaintiff must demonstrate "clear and convincing evidence" to oppose the current summary judgment motion, not simply demonstrate a genuine issue of material fact. Plaintiff cannot meet this heightened burden of proof and summary judgment is warranted.

## 2. Plaintiff Cannot Demonstrate The Required Causal Connection Necessary To Establish A *Prima Facie* Case Under The WPA.

To show causation under the WPA, the plaintiff must show that her "participation in the protected activity led to the adverse employment action." *Jones v. City of Allen Park*, 167 Fed. Appx. 398, 406 (C.A. 6 2006) (*citing Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287; 97 S.Ct. 568; 50 L.Ed.2d 471 (1977)

("stating that, in retaliation cases, the question is whether the employer would have reached the same decision even if the plaintiff had not engaged in protected conduct."). Here, Plaintiff cannot make the requisite causation showing.

### a. Defendant Lacked Any Knowledge That It Was the Plaintiff Who Complained as the October 2016 Facebook Posting Was Made Under a Fictitious Name.

Plaintiff admitted that she made the anonymous post under the name of "Angela Speed" to the Hospital's Facebook on October 4, 2016. (**Ex. 25**, Part 2, ps. 40:24-25-41:1-20). Indeed, Plaintiff testified that is was her intention to remain anonymous: "I tried to report it anonymous and Angela Speed was the name that I used so that I could report it anonymously". (**Ex. 25**, Part 2, p. 41:14-16). Plaintiff further admitted that she never notified any manager or supervisor at the Hospital that she made the October 4, 2016 posting. (**Ex. 25,** Part 2, p. 45:11-19). Without knowledge that Plaintiff made the October 4, 2016 posting, it is impossible for the Hospital to retaliate in response thereof.

### b. Temporal Proximity Alone Does Not Demonstrate a Causal Connection.

To satisfy the causation requirement, Plaintiff must show "[s]omething more than a temporal connection between protected conduct and an adverse employment action." *West v. General Motors Corp.*, 469 Mich. 177, 186; 665 N.W.2d 468 (2003). In other words, a "[p]laintiff must show something more than merely a coincidence in time between protected activity and adverse employment action." *Id*. The lack

of evidence other than the timing of plaintiff's termination in relation to his participation in protected activity fails to create a genuine issue of material fact that the termination was retaliatory. *Taylor v. Modern Engineering, Inc.*, 252 Mich. App. 655, 662; 653 N.W. 2d 625 (2002).

The Michigan Court of Appeals affirmed the trial court's summary dismissal where the plaintiff's WPA claim was not supported by anything more than temporal proximity. *Bolish v. Miller Park Townhomes LLC*, 2014 W.L. 60329 (Mich. App. 2014). In <u>Bolish</u>, a WPA claim was not found even where the personnel documents did not describe the reason for termination. Here, unlike *Bolish,* the personnel documents clearly demonstrate the reason for Plaintiff's discharge. (**Exs**. 34, 35, 36, 37, and 40). Given that retaliation was not found even where no reason was presented, such as in *Bolish*, it is clear that where, as here, the employer explained the basis for the termination, a *prima facie* case of retaliation cannot be established.

Plaintiff's WPA claim is solely based upon temporal proximity. This is not enough to demonstrate a causal connection.

### c. Intervening Issues Involving the Plaintiff Breaks Any Causal Connection.

An "intervening legitimate reason" to take an adverse employment action "dispels an inference of retaliation based on temporal proximity." *Wasek v. Arrow Energy Servs., Inc*., 682 F.3d 463, 472 (C.A. 6 2012) (ELCRA claim dismissed due to intervening event); *see also, Sussberg v. K-Mart Holding Corp.,* 463 F. Supp. 2d

12

704, 713-14 (E.D. Mich. 2006) (holding that intervening events contributed to the decision to terminate plaintiff, which severed the causal connection between his alleged protected activities under the Sarbanes-Oxley Act and his termination); *Freeman v. Ace Tel. Ass'n*, 467 F.3d 695, 698 (C.A. 8 2006) (granted summary judgment as to the whistleblower claim on the basis that "the presence of previous intervening events undermines any causal inference that a reasonable person might otherwise have drawn from temporal proximity.

As set forth in the Statement of Facts in Section 5, a report was made that Plaintiff was harassing a co-worker's spouse. (**Ex. 35**). After a thorough investigation, this complaint was verified. (**Ex. 37**, Chronology). Given the prior discipline issues (**Ex. 12**), the next step of discipline was termination. (**Ex. 40**). These subsequent and intervening events sever any causal connection.

**B.**      **Plaintiff's Count II Hostile Work Environment Claim Should Be Dismissed Because It Is Without Legal Or Factual Merit.**

The Hospital first contends that this Court is without subject matter jurisdiction to consider any hostile work environment claim as this claim was not first raised in either of the two Charges of Discrimination filed by Plaintiff before the EEOC. (**Exs. 41 and 42**). Even if this Court determines it is with jurisdiction to consider the hostile work environment cause of action, Plaintiff's claims should still be dismissed as they are without factual or legal support.

First, Plaintiff attempts to claim a hostile work environment due to the prior posting Katie Bailey are without legal or factual merit. Said act occurred in 2015 and therefore, beyond the 300-day limitation period. Further, Plaintiff did not report or complain about this conduct. Indeed, the first time Plaintiff saw the allege posting was in 2018 during the discovery phase of this litigation. Second, Plaintiff's claim of a hostile work environment based solely on of the Darrin doll is not severe or pervasive to constitute a hostile work environment. Thus, Plaintiff's claims of a hostile work environment should be dismissed.

1. **This Court is Without Subject Matter Jurisdiction to Consider Plaintiff's Hostile Work Environment Claim.**

In order for the court to have subject matter jurisdiction over a Title VII claim, the claimant must first unsuccessfully pursue administrative relief. *Ang v. Procter & Gamble Co.*, 932 F.3d 540, 545 (C.A. 6 1991). Federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant files the claim in an EEOC Charge or the claim can "reasonably expected to grow out of" the EEOC Charge. *Strouss v. Michigan Dep't of Corrs.*, 250 F.3d 336, 342 (C.A. 6 2001).

On February 13, 2017, after being terminated the previous week, Plaintiff filed a Charge of Discrimination which alleged a claim of retaliation due to her termination. (**Ex. 41**, 2/13/17 EEOC Charge). One month later, Plaintiff filed another Charge of Discrimination which claimed race discrimination. (**Ex. 42**, 2/13/17 EEOC Charge). The second charge again only addressed the termination. (**Ex. 42**).

In *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 474–75 (C.A. 6 2008), the district court dismissed the plaintiff's hostile environment claim because it determined that it was not the "focus" of her EEOC charge and because plaintiff did not allege sufficient facts to prompt the EEOC to investigate the claim. The appellate court in *Scott* affirmed the district court's conclusion that the plaintiff failed to exhaust her hostile environment claim as she offered no evidence that the EEOC actually investigated this claim or that such claims could reasonably be expected to grow out of the charge. *Id.*

A similar result was found in *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (C.A. 6 2010). The court in *Younis* held that the inclusion in an EEOC charge of a discrete act or acts, standing alone, is insufficient to establish a hostile-work-environment claim for purposes of exhaustion. *Id.*; s*ee also, e.g., Brown v. City of Cleveland*, 294 Fed. Appx. 226, 234-35 (C.A. 6 2008) (holding that an EEOC investigation of a hostile work environment could not reasonably be expected to result from a charge describing the denials of a promotion and a handicapped parking space)).

Published decisions in at least two other circuits have reached similar conclusions. *See, Chacko v. Patuxent Inst.*, 429 F.3d 505, 511 (C.A. 4 2005) ("The sharp differences between [the] evidence [presented for trial] and the allegations in [the plaintiff's] administrative charges compel the conclusion that he failed to

exhaust his administrative remedies."); *Cheek v. Western & Southern Life Ins. Co*., 31 F.3d 497, 503 (C.A. 7 1994) ("When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge.").

A similar result should be found here. Neither of the two Charges of Discrimination filed by Plaintiff references any claim or acts constituting a hostile work environment. (**Exs. 41 and 42**). Instead, both Charges dealt exclusively with the termination. *Id.* Thus, Defendant respectfully requests that this Court find that it is without subject matter jurisdiction to consider the hostile work environment claim.

**2. Plaintiff Cannot Rely On An Incident Which Occurred In 2015 To Demonstrate A Hostile Work Environment As She Had Never Seen The Posting Until The Discovery Phase Of This Lawsuit In 2018, The Claim Is Untimely And Plaintiff Failed To Report The Issue.**

In response to discovery requests, the Hospital provided a list of other individuals who also received discipline for conduct similar to Plaintiff's actions. (**Ex. 44**). In addition, Plaintiff provided the underlying write-ups, including a prior discipline of Katie Bailey from 2015. (**Ex. 45**). Plaintiff then deposed Ms. Bailey and is now trying to use the information learned through discovery to add to her claim of a hostile work environment. This should not be allowed.

First, Plaintiff never saw the posting in 2015. Indeed, Plaintiff admitted that the first time she saw the posting was at Ms. Bailey's deposition in 2018. (**Ex. 25**,

16

Part 2, p. 76:22-25–77:3). This lack of personal knowledge, in and of itself, should defeat a claim of a hostile work environment.

In addition to not being identified in the Charge of Discrimination (see Legal Argument (C)(1) above), the 2015 incident is time-barred. 29 U.S.C. § 626(d) provides that "[s]uch a charge shall be filed ... within 300 days after the alleged unlawful practice occurred." *Id*. at § 626(d)(2). In other words, a plaintiff must file a charge with the EEOC within 300 days of a discriminatory act, or any claims arising from that act will be dismissed as untimely. *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). *See also, Del. State Coll. v. Ricks*, 449 U.S. 250, 257, 101 S. Ct. 498, 66 L.Ed.2d 431 (1980) (claimant could not use a termination that fell within the limitations period to pull a time-barred discriminatory act into the limitations period). Here, Plaintiff's alleged acts of harassment in 2015 were outside the 300-day period and therefore, should not be considered by this Court.

Finally, any discriminatory act not previously raised to the Hospital by Plaintiff should be summarily dismissed. As to the Katie Bailey posting, Plaintiff claims that she "heard about it previously back in 2015". (**Ex. 25**, Part 2, p. 76:22-25–77:5 and 77:22-25–78:1-4). Plaintiff did not know from whom she heard it. *Id.* at 77:6-9.  Ms. Bailey did not even work at the same location as Plaintiff. *Id.* at

77:10-21.  Most importantly, Plaintiff never complained about this while employed. *Id*. at 78:5-14.

Having failed to object or report the alleged acts of discrimination at the time the alleged incidents occurred, Plaintiff cannot now attempt to claim to do so in this litigation. An employer must have notice of alleged harassment before being held liable for not implementing action and, thus, cannot be held liable if it does not have actual notice of the alleged harassment. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765; 118 S. Ct. 2257; 141 L. Ed.2d 633 (1998); *Chambers v. Trettco*, 463 Mich. 297, 313; 614 N.W.2d 910 (2000).  To establish the requisite element of respondeat superior liability, "the employer must have actual or constructive notice of the alleged harassment before liability will attach to the employer." *Radtke v. Everett*, 442 Mich. 368, 397, n.44 (1993). An employer "is liable for hostile environment sexual harassment only if it failed to investigate and take prompt, appropriate remedial action after having been put on notice of the harassment." *Chambers v. Trettco, Inc*., 463 Mich. 297 (2000).

Dismissal of any claims against the Hospital is particularly appropriate where, as here, the Hospital has published policies with complaint procedures and the employee failed to use it. *See Chambers v. Trettco, Inc.,* 244 Mich. App. 614 (2001) (on remand); *Leugers v. Pinkerton Security and Investigative Services*, 2000 U.S. App. LEXIS 1831 (C.A. 6 2000) (unpublished).  As Plaintiff failed to take advantage

of the Hospital's policy for reporting discrimination, she is precluded from asserting a hostile work environment claim. *Burlington Industries*, 524 U.S. at 765; *Chambers,* 466 Mich. At 313. Thus, these claims should be summarily dismissed.

**3. One Act, Not Directed To Plaintiff And Not Offensive To The Person To Whom It Was Directed, Cannot Be Considered To Be Sufficiently Severe Or Pervasive To Support A Claim Of Hostile Work Environment.**

In order to demonstrate a *prima facie* case of hostile work environment, the plaintiff must present evidence showing that under the "totality of the circumstances" the harassment was "'sufficiently serve or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Williams v. General Motors Corp.*, 187 F.3d 553, 560-62 (C.A. 6 1999) (*quoting Harris v Forklift Sys. Inc.,* 510 U.S. 17, 21, 114, S. Ct. 367, 126 L.Ed.2d 295 (1993)).   In determining whether a work environment is objectively offensive, "all the circumstances" are considered, including the following:

1.  the "frequency of the discriminatory conduct";

2.  the "severity" of the discriminatory conduct;

3.  whether the harassment is "physically threatening or humiliating" or is a "mere offensive utterance"; and

4.  whether the harassment "unreasonably interferes with an employee's work performance."

*Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993).  Summary judgment is appropriate where the trial court determines that as a matter of law, the conduct complained of was not sufficiently severe or pervasive.  *See, e.g., Smith v. Leggett Wire Co.,* 220

F.3d 752, 760-61 (C.A. 6 2000); *Burnett v Tyco Corp.,* 203 F.3d 980, 984-85 (C.A. 6 2000), *cert denied* 531 U.S. 928, 121 S. Ct. 307, 148 L.Ed.2d 246 (2000).

Discrimination laws do not create "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Serv.*, 523 U.S. 75, 80 (1998). *See, e.g., Berry v. Delta Airlines*, 260 F.3d 803 (C.A. 7 2001) (Title VII is not a "general civility code" designed to purge the workplace of all boorish or even all harassment conduct. Conduct that is "merely offensive, unprofessional or childish is not" unlawful "discriminatory conduct."). Employment discrimination laws do "not guarantee a utopian workplace, or even a pleasant one." *Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1164 (C.A. 7 1994). These laws do not "provide a remedy for every instance of verbal or physical harassment in the workplace" or "a federal guarantee of refinement and sophistication in the workplace." *Patterson v. County of Fairfax*, 2000 U.S. App. LEXIS 11009 (C.A. 4 2000) (citations omitted). For that reason, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment". *Faragher v. City of Boca Raton*, 524 U.S. at 788.

The Supreme Court explained that "[a] hostile work environment … typically comprises a succession of harassing acts, each of which 'may not be actionable on its own.'" *Ledbetter v Goodyear Tire & Rubber Co.,* 550 U.S. 618, 127 S. Ct. 2162, 2175, 167 L.Ed.2d 982 (2007) (*quoting Nat'l R.R. Passenger Corp. v Morgan*, 536

U.S. 101, 115-16 (122 S. Ct. 2061, 153 L.Ed.2d 106 (2002)). A discrete act is not actionable as a hostile work environment claim. *Id.*; see also, *Clay v United Parcel Service, Inc.*, 501 F.3d. 695, 708 (C.A. 6 2007) (the refusal to remove the plaintiff the position does not constitute the type of on-going harassment which would create a hostile work environment; "this is more akin to a discrete act, which is decidedly not actionable as a hostile work environment claim."). "Hostile work environments generally result only after an accumulation of discrete instances of harassment." *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 339 (C.A. 4 2006); *see also, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. Such claims are based on the cumulative effect of individual acts".). Given these standards, the one act, not directed to Plaintiff and not found offensive to the person to whom it was directed, cannot be considered to be severe or pervasive to support a claim of hostile work environment.

**C.    Plaintiff's Discrimination Claims in Counts III and IV Should Be Dismissed Because They Are Without Legal or Factual Merit.**

Plaintiff's allegations do not rise to the level of a *prima facie* case of discrimination. Plaintiff mischaracterizes as unlawful "discrimination" any comments or conduct that she does not like. Employment discrimination laws only address discrimination. *E.g., Ferguson v. Veterans Administration*, 723 F.2d 871, 872 (C.A. 11 1984). Those laws do "not protect employees from all unfair or

unprofessional treatment, but only from intentional discrimination on the basis of 'certain, discreet classifications.'"  *Rose-Maston v. NME Hospitals*, 133 F.3d 1104, 1108 (C.A. 8 1998). For this reason, courts do not act "as a super-personnel department that re-examines an entity's business decisions." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (C.A. 7 1986), *cert. denied*, 479 U.S. 1066 (1987). It is not the court's role to "second guess business decisions made by employers, in the absence of some evidence of impermissible motives." *Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1403-4 (C.A. 10 1988). The legal prohibition against employment discrimination based on a protected classification thus "was not intended as a vehicle for judicial review of business decisions." *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (C.A. 7 1980); *see also, Grebin v. Sioux Falls Indep. Sch. Dist. No. 49-5*, 779 F.2d 18, 20 n. 1 (C.A. 8 1985) (the age discrimination law is "not intended as a vehicle for judicial review of employment decisions which are made in good faith and are not actuated by age bias").  "No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers," the law does not interfere. *Pollard v. Rea Magnet Wire Co*., 824 F.2d 557, 560 (C.A. 7 1987).

### 1.   The Plaintiff Cannot Demonstrate a Prima Facie Case As She Was No Longer Qualified to Serve as a Phlebotomist.

Plaintiff cannot establish a prima facie case of discrimination because, as a threshold matter, she cannot show that she was adequately performing in her

position. Plaintiff must show that she was performing "at a level which met [Employer's] legitimate expectations." *McDonalds v. Union Camp Corp*., 898 F.2d 1155, 1160 (C.A. 6 1990), *citing Huhn v. Koehring*, 718 F.2d 239, 243 (C.A. 7 1983). Plaintiff cannot do that. Indeed, it was her repeated acts of misconduct which led to the next and final step of discipline, that of termination. (**See Statement of Relevant Facts, Sections 1 and 5**).

The Hospital acted well within the law when it terminated the employment due to multiple offenses consistent with its progressive discipline system. *See McDonalds v. Union Camp Corp*., 898 F.2d at 1160 (plaintiff failed to make out a prima facie case of discrimination when plaintiff failed to show that he was able to meet his employer's legitimate expectations).

Plaintiff's only "proof" of discrimination is that she is a member of a protected class. That is insufficient. *See Higgins v. Newhouse*, 54 FEP Cases 1235 (E.D. Mich. 1989) (discharged black employee's failure to present evidence that similarly situated white employees were treated differently bars her from making out a prima facie case). As Plaintiff cannot establish a prima facie case of discrimination, summary judgment is warranted.

### 2. The Hospital Lawfully Disciplined and Terminated the Plaintiff for Legitimate, Non-Discriminatory Reasons.

Contrary to Plaintiff's erroneous contentions, the discipline and termination was not because of her race. Instead, the Hospital's actions were based solely and

exclusively on legitimate, non-discriminatory reasons. (**See Statement of Relevant Facts, Section 5**). The "anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace." *Kiel v. Select Artificials*, 169 F.3d 1131, 1136 (C.A. 8 1999). "It is axiomatic that an employer may lawfully take appropriate action, including discipline and discharge, to address an employee's insubordination." *Amersino Marketing Group LLC*, 183 LRRM 1028, 1030 (2007) (citations deleted). Here, Plaintiff was disciplined for sending a harassing e-mail to a co-worker's spouse (**Ex. 35**) and terminated as this was the next step in the progressive discipline steps. (**Ex. 40**).

Plaintiff's discipline was consistent with others who committed similar infractions. (**Exs. 43 and 44**). These disciplines disprove Plaintiff's allegation that the Hospital unlawfully subjected her to disparate treatment because of her race.

Plaintiff attempts to claim that she received discipline far more severe than that received by Katie Bailey, a Caucasian employee. The misconduct in both situations involved harassing messages on social media. Contrary to Plaintiff's allegations, however, Ms. Bailey did receive a harsh discipline. As a result of Ms. Bailey's offensive posting, she was suspended for five days, banned from the Dearborn hospital, and required to undergo anger management classes. (**Ex. 45**, Bailey Deposition, p. 30:19-25 and 31:1). The only reason Plaintiff was terminated,

24

as opposed to being suspended, was that she already received a 3-day suspension. (**Ex. 12**). Ms. Bailey, however, had no prior disciplines. (**Ex. 45**, p. 37:9-14).

**D.    Plaintiff Is Not Entitled to Front Pay Damages.**

Courts have repeatedly denied front pay damages to a plaintiff where the employer can prove that, for some legitimate, non-retaliatory reason, the plaintiff would no longer have been employed at the time of judgment. *See Schrand v. Federal Pacific Electric Company*, 851 F.2d 152 (C.A. 6 1988).  Here, Plaintiff represented to the Hospital that she voluntarily left her prior employment but Defendant learned in the course of discovery that she was in fact fired.  (**Ex. 46,** Employment Records). This misrepresentation is grounds for immediate termination (**Ex. 47**, Application certification). Therefore, front pay is not an appropriate remedy in the case at bar pursuant to the after-acquired evidence doctrine.

## <u>CONCLUSION</u>

Plaintiff cannot establish a genuine issue of material fact sufficient to withstand summary judgment and therefore, the Hospital requests this Court to grant summary judgment and dismiss Plaintiff's claims in their entirety with prejudice.

Respectfully submitted,

BUTZEL LONG, a professional corporation

By:    /s/ Rebecca S. Davies
         Rebecca S. Davies (P52728)
Attorneys for Defendant

Dated: June 8, 2018

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 8, 2018, I electronically filed the foregoing paper, Defendant's Motion for Summary Judgment, Corrected Brief in Support of Motion for Summary Judgment, Index of Exhibit, and this Certificate of Service, with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

By:   <u>/s/ Rebecca S. Davies</u>
      Rebecca S. Davies (P52728)

Det 1872817