UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GABRIELLE WILLIAMS,

        Plaintiff,

  -v-                  Case No:  2:17-cv-11381-SJM-EAS
                             Hon.  Stephen J. Murphy III
                         Magistrate Judge:  Elizabeth A. Stafford

OAKWOOD HEALTH CARE, INC.,
d/b/a BEAUMONT HOSPITAL-DEARBORN,
a Michigan non-profit corporation,

        Defendant.

_____/

| | |
|---|---|
| CHUI KAREGA (P27059) | REBECCA S. DAVIES (P52728) |
| LAW OFFICES OF CHUI KAREGA | BUTZEL LONG, a professional corp. |
| Attorney for Plaintiff | Attorney for Defendant |
| 19771 James Couzens Highway | 41000 Woodward Avenue |
| Detroit, Michigan 48235-1977 | Bloomfield Hills, MI 48304 |
| (313) 864-0663 | (313) 225-7028 |
| ck27059@msn.com | davies@butzel.com |

_____

# PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**NOW COMES PLAINTIFF**, Gabrielle Williams, by and through her attorney,

Chui Karega, pursuant to rule 56(a) of the Federal Rules of Civil Procedure, in

opposition to the Motion For Summary Judgment for the reason the motion lacks legal

and factual merit; including, but not limited to multiple issues of material fact remain for

trial in this matter; as detailed in the accompanying brief.

      Plaintiff denies the moving party sought concurrence of counsel prior to the filing

Of the Motion For summary Judgment.

June 1, 2018 at 12:53 p.m. by electronic mail Plaintiff's counsel requested a copy of the previously filed Motion For Summary Judgment to determine whether Plaintiff could concur in the relief being sought.    There was no response from defense counsel until 10:19 a.m. June 8, 2018 when defense counsel emailed a copy of the Motion, Brief and forty-seven (47) attachments which she filed at 11:14 a.m. on the same date; less than one (1) hour after sending her email.  Defense counsel never intended to conduct an in-person, telephonic or other conference as required by Local rule 7.1.

LAW OFFICES OF CHUI KAREGA

   /s/   Chui Karega
BY: CHUI KAREGA   (P27059)
Attorney for Plaintiff
19771 James Couzens Highway
Detroit, Michigan 48235-1937
(313) 864-0663
ck27059@msn.com

Dated: June 28, 2018

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GABRIELLE WILLIAMS,

            Plaintiff,

    -v-                     Case No:  2:17-cv-11381-SJM-EAS
                                  Hon.  Stephen J. Murphy III
                                  Magistrate Judge:  Elizabeth A. Stafford

OAKWOOD HEALTH CARE, INC.,
d/b/a BEAUMONT HOSPITAL-DEARBORN,
a Michigan non-profit corporation,

            Defendant.

_____/

| | |
|---|---|
| CHUI KAREGA (P27059) | REBECCA S. DAVIES (P52728) |
| LAW OFFICES OF CHUI KAREGA | BUTZEL LONG, a professional corp. |
| Attorney for Plaintiff | Attorney for Defendant |
| 19771 James Couzens Highway | 41000 Woodward Avenue |
| Detroit, Michigan 48235-1977 | Bloomfield Hills, MI 48304 |
| (313) 864-0663 | (313) 225-7028 |
| ck27059@msn.com | davies@butzel.com |

_____

# PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INDEX OF EXHIBITS

Submitted by:

LAW OFFICES OF CHUI KAREGA
By: CHUI KAREGA (P27059)
Attorney for Plaintiff
19771 James Couzens Highway
Detroit, Michigan 48235-1977
(313) 864-0663
ck27059@msn.com

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .i

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . .ii

Counter Questions Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Counter Factual Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Law and Argument I  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Law and Argument II  . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . .8

Law and Argument III. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Law and Argument IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

# TABLE OF AUTHORITIES

Table of Cases:

Brown v Mayor of Detroit, 478 Mich 589, 594, 734 NW2d 514, 517 (2007). . . . . . . . . . 5

Chandler v. Dowell Schlumberger, Inc., 456 Mich 395, 398;
572 NW2d 210 (1998) . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 8

Debano-Griffin v. Lake Co., 493 Mich 167, 176; 828 NW2d 634 (2013) . . . . . . . . . .  6

DiCarlo v. Potter, 358 F3d 408, 414 (6th Cir., 2004) . . . . . . . . . . . . . . . . . . . . . . . . . .11

Dudewiz v. Norris-Schmid, Inc., 443 Mich 68,75; 503 NW2d 645 (1993)  . . . . . . . . . .5.

Feick v. Monroe Co., 229 Mich App 335, 343; 582 NW2d 207 (1998) . . . . . . . . . . . . .

Hawkins v. Annheuser-Busch, Inc., 517 F3d 321, 333 (6th Cir., 2008) . . . . . . . . . . . 11

Hazle v. Ford Motor Co., 464 Mich 456; 628 NW2d 515 (2001) . . . . . . . . . . . . . .6, 9, 10

Manzer v. Diamond shamrock Chemical Co., 29 F3d 1078,
1084 (6th Cir.,1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . 14

Manzo v. Petrella, 261 Mich PP 705, 712; 683 NW2d 669 (2004) . . . . . . . . . . . . . . . 8

McDonnell Douglas Corp. v. Green, 411 U.S. 792; 93 S Ct 1817; 36 L Ed2d 668
(1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . .9, 12

Powers v. Post-Newsweek Stations, 483 Mich 987 n3; 764 NW2d 564 (2009) . . . . . .9

Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 147; 120 S.Ct. 2097;
147 L.Ed.2d 105 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Shallal v. Catholic Social Services of Wayne County, 455 Mich 604, 612; 566 NW2d
571 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

Skinner v. Square D Co., 445 Mich  153, 164; 516 NW2d 475 (1994) . . . . . . . . . . . .14

Sniecinski v. Blue Cross Blue Shield of Michigan, 469 Mich 124, 132-133; 666 NW2d
168 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Tammy McNeil-Marks v. Mid-Michigan Medical Center-Gratiot, 2016 WL 3351621,
 9-10 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Texas Department of Community Affairs v.  Burdine, 450 U.S. 248, 252-253 (1981) . 12

Table of cases
Page 2

Tisdale v. Federal Express Corp., 415 F 3d 516, 529 (6th Cir., 2005) . . . . . . . . . . . . 14

Tyrna v Adamo, Inc, 159 Mich App 592, 601; 407 NW2d 47 (1987). . . . . . . . . . . . . 14

West v General Motors, 469 Mich 177, 184-187 (2003) . . . . . . . . . . . . . . . . . . . . . . . . .6

Whitman v. City of Burton, 493 Mich 303, 306 (2013) . . . . . . . . . . . . . . . . . . . . . . . . .5

Statutes:

Michigan Elliot-Larsen Civil Rights Act MCL 37.3101, et seq . . . . . . . . . . . . . . . . . . . .17

Michigan Whistleblowers' Protection Act MCL 15.363, et seq . . . . . . . . . . . . . . . . .5, 8

Title VII of the Civil Rights Act of 1964 42 USC 2000e, et seq . . . . . . . . . . . . . . . . . . . .. .ii

Jury Instructions:

M Civ JI 107.03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

# **INTRODUCTION**

The instant case is one involving employment discrimination May 1, 2017 Plaintiff filed her multiple count Complaint in this Court. The complaint sets forth violations of federal and state statutes:

     A.    Michigan Whistleblowers' Protection Act MCL 15.363, et seq relating to the decision to eliminate the position of Director of Nutrition Services

     B.    Title VII of the Civil Rights Act of 1964 42 USC 2000e, et seq by the maintaining a racially hostile work environment;

     C.    Michigan Elliot-Larsen Civil Rights Act, 37 MCL 37.3101, et seq; through the racially hostile work environment, and the termination of employment of Plaintiff;

     D.    Title VII of the Civil Rights Act of 1968, 42 USC 2000e, et seq due to the termination of Plaintiff's employment.

## <u>COUNTER QUESTIONS PRESENTED</u>

I.  Does Plaintiff qualify for protection under the Michigan Whistleblower's Protection Act, MCL 15.363?

Plaintiff Answers "Yes"

II.  Is the record evidence sufficient to support a finding violation of the Michigan Whistleblower's Protection Act, MCL 15.363?

Plaintiff Answers "Yes"

III.  Is the record evidence sufficient to support a finding a hostile work environment?

Plaintiff Answers "Yes"

IV.  Is the record evidence sufficient to support a finding Plaintiff was the victim of racial discrimination?

Plaintiff Answers "Yes"

V.  Does this court have subject matter jurisdiction?

Plaintiff Answers "Yes"

VI.  Is Plaintiff disqualified from receiving front pay?

Plaintiff Answers "No"

# <u>COUNTER FACTUAL SUMMARY</u>

Plaintiff is a certified Phlebotomist who began employment with defendant December 12, 2012 as a part-time laboratory technician.   July, 2015 Plaintiff was promoted to Phlebotomist.   She became full-time July, 2016 working in the Phlebotomist laboratory, part of the overall lab at Oakwood Hospital.

The Oakwood Hospital laboratory services has 300 employees working in  eight (8) section including Specimen Processing, Transfusion, Quality Assurance, Automated Technical Lab, Microbiology, Cytology and Histology, Patient service Center, and Phlebotomy.  (FF: 41, 21)

In February, 2015, Kathryn Bailey, an employee in defendant's lab published on Facebook and Twitter a series of racist tirades following a romantic liaison between Bailey's partner and an African American male and Bailey's partner; each an employee of defendant's lab.  (Exhibits A, B, C, and D)    Bailey identified herself as an Oakwood Hospital employee on the main screen of her Facebook posts.   Text of Bailey's publications follow verbatim, including what appear to be typing errors:

> "No.more secrets about it Alicia is fucking.Darrin and lwft.m…"
> (Exhibit A)
>
> "just want to say congrats Darrin Johnson, u have helped ruin a family.  Hope ur both happy.  Fuck  you both . . . hope u both get every bad thing that comes ur way.  Once again thank you Alicia for leaving me for that piece of shit Darrin Johnson.  Hope u ou both are happy with ur choices and.get whats coming.to you."
> (Exhibit B)
>
>  "Have fun fucking ur nigger bitch.  Fuck you.  Hope u catch something or get pregnant, see how much how much he loves u then.  Fuck you Darrin." (Exhibit C)

"By lerting.his dick.inside.u u ruined us..ur lies. Ur cheating. Everyrhing..hope.u rot in.hell for.this shit.u have done. U will.end.up.pregnant and.along.from this nigger.   So.have fun.ruining the rest of.ur life.  It could.have been.fixed.but.u are a whore and.thats why we cant.be"  (Exhibit D)

All the 300 employees of the Oakwood lab became aware of the substance of Bailey's posts.   Hostility toward Oakwood lab employees worsened following the minor treatment of Bailey and continue to date.  (Exhibit E)

Despite the damaging racist views of Bailey; other employees, including Plaintiff and other African Americans, had to continue to work with Bailey.  (AA-2: 164,15)1/

September, 2016 a sexual relationship between lab employees Darrin Johnson and Alicia Ososkie had ended.   Despite the fact Ososkie and Bailey reunited, Bailey continued animosity toward Darren Johnson.  (CC: 24,24)    Ososkie retrieved a white doll wearing a Beaumont uniform from a cleaning supply room (CC: 18,24).   Ososkie then colored all the white portions of the doll black with a black Sharpie pen.  (CC: 16,24/ 24,3)  Ososkie also wrote the name "Darren" on the doll.

After blackening the doll, Ososkie placed it anonymously on the desk in the laboratory.  (CC: 32,22)   Ososkie knew other employees would see the Black Sambo doll.  (CC:33, 13-20/36, 23)    Ososkie denied she had made it and laughed when questioned about it by Darren Johnson.  (CC: 37,7)3/

Following Ososkie's placement of the doll in the lab; numerous employees of the lab used the Black Sambo doll as a joke, including, but not limited to, Janice Davis,

---

1/    Parenthetical references containing the letter "AA-2" refers to the April 23, 2018 transcript of the deposition of Plaintiff.  The number following the colon refers to the page on which the cited language can be found. The number after the comma refers to the line on which the cited language is located.

Phlebotomy Lab Manager.  Ms. Davis was observed referring to the doll as one of the African American lab employees.  (Exhibit  E, para 10)

Darrin Johnson placed pink exaggerated smiling lips and white rims on the shoes on the Black Sambo doll after he saw it.  (DD: 21, 2)   Johnson also altered the eyes to make them look more slanted like his eyes.  (DD: 21, 15)2/

Plaintiff attempted without success throughout September and October, 2016 to address the hostile racial environment with Keith Reynolds and Tim Vargas, upper management of the lab.  (AA-2: 133,19 – 134,2)

The Black Sambo doll remained visible in the lab from September, 2016 through October, 2016.  (AA-2: 116, 23  - 117, 5)  Phlebotomy Manager Janice Davis was instructed by her supervisor, Keith Reynolds, to have the doll removed; but she did not comply.  (FF:18, 11)  Frustrated by continued presence of the Black Sambo doll, and ridicule by other employees, Plaintiff and Diedra Garrett, another African American employee of the lab, decided to take action.

October 3, 2016 Plaintiff posted a photograph of the Black Sambo doll (Exhibit H) on the website of Beaumont Hospital.    She did so anonymously in keeping with Oakwood policy.  (AA-2: 137, 17)    Plaintiff did **not** violate any rule or guideline of Oakwood Hospital or its parent, Beaumont Hospital in posting the images.  (HH: 34,3-6)

Following the post to the Oakwood website by Plaintiff, Janice Davis announced the person who reported the Black Sambo doll "would be dealt with."  (AA-2: 140, 1

_____

2/     Parenthetical references containing the letter "DD" refers to the March 13, 2018 transcript of the deposition of Darren Johnson.  The number following the colon refers to the page on which the cited language can be found. The number after the comma refers to the line on which the cited language is located.

and Exhibit K, para 9c)

Lab Manager Janice Davis and Darrin Johnson embarked on an effort to determine who had        When Plaintiff had posted the Black Sambo doll on Beaumont's website,

Johnson and Plaintiff did not work directly together.  They worked totally opposite shifts.  (DD: 33, 6)

Mid-October, 2016 Plaintiff workload was increased, claims against her were fabricated, and she was restricted in the hospital issued uniform that she could wear. (Exhibit K, para 9c)

January 17, 2017 Plaintiff posted on Facebook a complaint about the Black Sambo doll and the lack of response by defendant and its managerial personnel. (Exhibit G)  Darrin Johnson was not a Facebook friend of Plaintiff.   However, after several of Plaintiff's Facebook friends commented on the post; Darren Johnson screen-shotted the post.  (DD: 10, 11)  Johnson then posted a derogatory post to relatives of Plaintiff on Facebook.  (Exhibit I)     In response, Plaintiff sent a private message to the wife of Johnson with Exhibit J attached, disclosing, among other things, Johnson's extramarital activities with co-workers.

Darrin Johnson complained to Janice Davis about Plaintiff's private message to his wife.  (DD:34, 2)     Davis initiated an investigation of Plaintiff.   Plaintiff was suspended, then discharged for allegedly harassing a coworker.

_____

3/    Parenthetical references containing the letter "CC" refers to the March 23, 2018 transcript of the deposition of Alicia Ososki.  The number following the colon refers to the page on which the cited language can be found. The number after the comma refers to the line on which the cited language is located.

# LAW AND ARGUMENT I

## PLAINTIFF QUALIFIED FOR PROTECTION UNDER MICHIGAN'S WHISTLEBLOWER PROTECTION ACT

The Whistleblowers Protection Act, MCLA 15.362 prohibits discrimination against employees who reports or are preparing to report a violation of law, regulation, or rule to a public body.  Brown v Mayor of Detroit, 478 Mich 589, 594, 734 NW2d 514, 517 (2007).  The statute provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the **employee, or a person acting on behalf** of the employee, **reports or is about to report**, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated  pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. (emphasis provided)

The purpose of the Whistleblowers Protection Act "is to alleviate the inability to combat corruption or criminally irresponsible behavior in the conduct of government or large businesses."  Shallal v. Catholic Social Services of Wayne County, 455 Mich 604, 612; 566 NW2d 571 (1997) quoting Dudewiz v. Norris-Schmid, Inc., 443 Mich 68,75; 503 NW2d 645 (1993)

The statute protects the public; but one reporting under the Act does not have to be motivated by a desire to inform the public of matters of public concern.  Whitman v. City of Burton, 493 Mich 303, 306 (2013).

-5-

Plaintiff need only show the protected activity was a motivating factor in the adverse action; not the only factor. Debano-Griffin v. Lake Co., 493 Mich 167, 176; 828 NW2d 634 (2013) , Hazle v. Ford Motor Co., 464 Mich 456; 628 NW2d 515 (2001) , West *v* General Motors, 469 Mich 177, 184-187 (2003)  Sniecinski v. Blue Cross Blue Shield of Michigan, 469 Mich 124, 132-133; 666 NW2d 168 (2003)  As stated in M Civ JI 107.03:

> *"Protected Activity does not have to be the only reason,*
> *or even the main reason, but it does have to be one of the*
> *reasons that made a difference in defendant's decision to*
> *[discharge/or / threaten /or /discriminate against] the*
> *plaintiff "*

The WPA is a remedial statute to be liberally construed in favor of the person(s) the legislature intended to benefit. Chandler v. Dowell Schlumberger, Inc., 456 Mich 395, 398; 572 NW2d 210 (1998)

Plaintiff is a qualified protected person who sought to end an environment of racial hostility by notifying her employer, the public, and federal agency of the events at Oakwood Hospital.   Having gotten no satisfaction or even an audience from upper management, Plaintiff, in concert with her co-worker, Diedra Garrett made a decision to go outside the corporation, including getting the assistance of the United States Equal Employment Opportunity Commission and an attorney.

Plaintiff and Garrett agreed upon a division of labor.   Plaintiff  would retain and inform the attorney.  In addition, Garrett would, and did, take the Black Sambo doll to the U.S. Equal  Employment Opportunity Commission and the Michigan Department of Civil Rights (by the same action).

-6-

The WPA specifically anticipates the division of labor utilized by Plaintiff and Ms. Garrett in this matter.   Plaintiff is protected from retaliation as a whistleblower where **a person acting on behalf of the employee, reports or is about to report**, a violation of legal principles.   Thus the reporting through another person makes Plaintiff a protected whistleblower.

In addition, Plaintiff's report to an attorney is protected activity.  <u>Tammy McNeil-Marks</u> v. <u>Mid-Michigan Medical Center-Gratiot</u>, 2016 WL 3351621, 9-10 (2016)

An attorney is recognized as a member of a "public body" within the meaning of the Whistleblower Protection Act.  Plaintiff was reporting with the protection of the WPA each time Plaintiff reported the Black Sambo doll and the racially hostile events at Oakwood.

Accordingly, defendant is mistaken when it asserts Plaintiff does not qualify for protection within the meaning of WPA.

Good faith reporting of conduct does not have to be found a violation in fact to protect the reporting employee.  <u>McNeil-Marks</u>, supra.

None of the violations reported by Plaintiff were ever shown to be anything other than accurate and true.

-7-

## LAW AND ARGUMENT II

## THE EVIDENCE OF RECORD SUPPORTS
## A REASONABLE TRIER OF FACT FINDING VIOLATION
## OF MICHIGAN'S WHISTLEBLOWER PROTECTION ACT

The Whistleblowers Protection Act, MCLA 15.362 prohibits discrimination in retaliation for three (3) different types whistleblowing:  (1)  reporting to a public body a violation of a law, regulation or rule, or (2) being about to report such a violation to a public body, or (3) being asked by a public body to participate in an investigation. Chandler v. Dowell Schlumberger, Inc., 456 Mich 395, 398; 572 NW2d 210 (1998)

To establish a prima facie in court a plaintiff need show (1) protected activity by or on behalf of Plaintiff;  (2) discharge from employment or other covered adverse action; and (3) a casual connection between the protected activity and the personnel action.  Manzo v. Petrella, 261 Mich App 705, 712; 683 NW2d 699 (2004)

The protected activity of Plaintiff involves contacting the U.S. Equal Employment Opportunity Commission in concert with Diedra Garrett, and contacting and retaining an attorney to further the reporting effort.   Through those activities Plaintiff satisfied the "reporting" requirement of WPA.  The trier of fact may find by a preponderance of the evidence that Plaintiff engaged in "reporting."

The clear and convincing standard being proposed by the defense applies only if the trier of fact finds Plaintiff was not involved in "reporting" but instead was "about to report."

Given the right of the trier of fact to find Plaintiff "reported" to EEOC through Diedra Garrett, this court must apply the preponderance of evidence standard

and prohibited from using the clear and convincing standard in evaluating defendant's Motion For Summary Judgment.

Plaintiff has direct evidence of retaliation involved in her discharge. Direct evidence requires the factual conclusion that unlawful discrimination was at least a motivating factor in the employer's action. Powers v. Post-Newsweek Stations, 483 Mich 987 n3; 764 NW2d 564 (2009) see also Hazle v. Ford Motor Co., 464 Mich 456, 462; 628 NW2d 515 (2001)

When direct evidence of unlawful retaliation can be established, Plaintiff is not required to present her case under the burden shifting procedure of McDonnell Douglas Corp. v. Green, 411 U.S. 792; 93 S Ct 1817; 36 L Ed2d 668 (1973)

The direct evidence in this case is highlighted by the threat and promise of retaliation Janice Davis announced when she said the person responsible for reporting "would be dealt with." Janice Davis and Darrin Johnson made sure they discovered who reported the Black Sambo doll. Once it was known Plaintiff reported the doll, she was subjected to more onerous working conditions Plaintiff's workload was increased, claims against her were fabricated, and she was restricted in the hospital issued uniform that she could wear. (Exhibit K, para 9c)

The fact Lab Manager Davis refused to have the doll voluntarily removed as directed (FF: 18, 11), ridiculed African American employee(s) while playing with the doll (Exhibit E), threatened to retaliate against the whistleblower, followed by a change in Plaintiff's working conditions; accompanied by an investigation of Plaintiff started by Davis provides direct evidence the baseless investigation leading to the discharge of

Plaintiff was motivated, at least in part, by activity protected by WPA.  Retaliatory

animus can be a basis for finding violation of WPA.  <u>Hazle</u> v. <u>Ford Motor Co.</u>, 464 Mich

456, 476; 628 NW2d 515 (2001)

In addition to direct evidence of retaliation indirect evidence also exist in this

case for resolution by the trier of fact.  January 17 Phlebotomy lab Manager Davis

initiated an investigation of Plaintiff, resulting in the discharge.   Not only were Davis

and Johnson aware of the protected activity of Plaintiff, October, 2016 Tim Vargas had

been advised by Plaintiff of her protected activity.  (AA-2: 137, 8)

Following Plaintiff's private message of January 17, 2017 it cannot be denied

defendant, and its managers knew Plaintiff was part of a whistleblowing effort to the

U.S. Equal Employment Opportunity Commission due to the literal text of the private

message to Mrs. Johnson:

> ". . . one of our sisters took the doll to HR Administration and the
> Eeoc . . . ." (Exhibit J)

Immediately upon learning of Plaintiff's January 17 private message, Janice

Davis initiated a suspension of Plaintiff.   No incident type was given.   (Exhibit L)

Following minimal investigation, Plaintiff was discharged.   A single reason was given:

> "Because a co-worker (D.J.) disagreed with her on a workplace
> issue, employee intentionally sought out a co-worker's wife on
> social media for the purpose of harassing the wife and co-worker
> D.J. by revealing personal information about the D.J.'s behavior
> and personal relationships with co-workers." (Exhibit M)

No further alleged misconduct was stated as the basis for the discharge of Plaintiff.

This record allows the trier of fact to find the allegation against Plaintiff was false, an act

of discrimination in violation of WPA.

-10-

# LAW AND ARGUMENT III

## THE RECORD EVIDENCE SUPPORTS
## A REASONABLE TRIER OF FACT FINDING
## A RACIALLY HOSTILE WORK ENVIRONMENT

Plaintiff has included in her complaint an allegation a racially hostile environment permeated the workplace in the Oakwood Hospital laboratory.    Defendant attempts to convince this court Plaintiff is relying on a single incident involving Katie Bailey in 2015. There is no question the tweets and post of Katie Bailey are pervasive and severe creating a hostile work environment when it is tolerated as was done in Oakwood Hospital.

.   In fact the employer admits Bailey had violated two (2) major work rules which the employer's labor relations representative admitted created a hostile work environment.  (II: 33, 9 -  34, 25)

Though directed to specific employees, given the severity of the language the entire 300 member staff of the laboratory, including Plaintiff became aware of, and affected by, the behavior.  But there is more than the 2015 incident on this record.

Racially hostile environment can be established by direct or circumstantial evidence. DiCarlo v. Potter, 358 F3d 408, 414 (6th Cir., 2004) to determine if there was severe or pervasive conduct of a racial nature.  Hawkins v. Annheuser-Busch, Inc., 517 F3d 321, 333 (6th Cir., 2008)

As detailed in the affidavit of Diedra Garrett (Exhibit E) the name calling, harassment, and humiliation is pervasive and ongoing through the present.   Ms. Garrett's appeals to managers have fallen on deaf managerial ears.  No action has ever

-11-

been taken.

Given a license to racially harass employees; it is no surprise a Black Sambo doll was made and displayed in the Oakwood lab.    Visible to more than 300 employees, the Black Sambo doll remained in public view for more than a month.    The doll was used by the Manager Janice Davis, to ridicule Black employees; saying the Black Sambo doll looking like a Black female employee in the lab.

The same Manager Janice Davis failed to have the doll removed when told to do so.   (FF: 18, 11)   In fact Ms. Davis did not even speak to Darrin Johnson about removing the Black Sambo doll.   The record demonstrates Ms. Davis thought the Black Sambo doll was funny, and to be used as a joke.   (Exhibit E)    Not surprising, co-workers of Plaintiff also began to ridicule and laugh at the doll.  (Exhibit E)

This record allows a trier of fact to find a racially hostile environment.

## <u>LAW AND ARGUMENT IV</u>

## <u>THE RECORD EVIDENCE SUPPORTS</u><br><u>A REASONABLE TRIER OF FACT FINDING</u><br><u>PLAINTIFF WAS THE VICTIM OF RACIAL DISCRIMINATION</u>

Plaintiff has included in her complaint an allegation she was the victim of not only a racially hostile work environment but also additional unlawful racial discrimination, up to and including discharge.  Should the court determine the shifting burden process set forth in <u>McDonnell Douglas Corp.</u>, supra, and <u>Texas Department of Community Affairs</u> v.  <u>Burdine</u>, 450 U.S. 248, 252-253 (1981) is to be used, the record evidence sets forth the prima facie case of Plaintiff.

Defendant admits Plaintiff is a member of a protected class.   However,

-12-

defendant contends Plaintiff was no longer qualified for employment.    The basis of this

claim  is defendant's assertion that Plaintiff was allegedly not performing in her position.

Of course, defendant is attempting to assert it has a non-discriminatory legitimate

business reason for the discharge of Plaintiff.    Defendant has the burden of proof on

this issue.

Defendant ask this court to ignore the reason given for the discharge of Plaintiff.

In the corrective action given Plaintiff a single reason was given for the termination:

> "Because a co-worker (D.J.) disagreed with her on a workplace
> issue, employee intentionally sought out a co-worker's wife on
> social media for the purpose of harassing the wife and co-worker
> D.J. by revealing personal information about the D.J.'s behavior
> and personal relationships with co-workers." (Exhibit M)

Nothing else was mentioned.    Recognizing the proffered reason is completely

insufficient to justify disciplinary action (particularly in the factual setting of this case);

defendant now attempts, for the first time during litigation, to shift to a performance

based reason.   Indeed, Keith Reynolds, Director of Laboratory Services, admits:

> ". . . we didn't terminate because of a private message on
> Facebook.    We terminated due t subsequent performance-
> related issues. . ." (Exhibit FF: 69, 8)

The jury in this case is under no obligation to accept the claimed

legitimate business reasons for the actions of the defense.   The reason defendant sets

forth during litigation is not credible.    The trier of fact may infer the ultimate fact of

discrimination from the falsity of the employer's explanation.   Reeves v. Sanderson

Plumbing Products, 530 U.S. 133, 147; 120 S.Ct. 2097; 147 L.Ed.2d 105 (2000):

> "The fact-finders' disbelief of the reasons put
> forward by the defendant (particularly if disbelief is
> accompanied by a suspicion of mendacity), may,

-13-

> together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier-of-fact to infer the ultimate fact of intentional discrimination."

Plaintiff can show an employer's explanation is not credible by either (1) the proferred reason(s) have no basis in fact, or (2) did not actually motivate the employer; or (3) the reasons are insufficient to motivate discharge. Manzer v. Diamond shamrock Chemical Co., 29 F3d 1078, 1084 (6th Cir., 1994)  Tisdale v. Federal Express Corp., 415 F 3d 516, 529 (6th Cir., 2005)  Plaintiff can present evidence to the trier of fact to address this criterior mentioned above.

The claim Plaintiff violated rule 106 has no basis in fact and is insufficient for discharge; particularly in view of the fact Plaintiff's private message was in response to the Facebook post of co-worker Darrin Johnson; without any disciplinary action to Johnson.   Defendant admits the private message did not motivate the discharge.

The trier of fact has an adequate record to find pretext and the ultimate question of intentional discrimination.   See also  Skinner v. Square D Co., 445 Mich 153, 164; 516 NW2d 475 (1994)

If the trier of fact believes plaintiffs' evidence, it can infer a causal connection between plaintiff's decision to report and adverse action taken against plaintiff. Tyrna v Adamo, Inc,159 Mich App 592, 601; 407 NW2d 47 (1987).

## **PLAINTIFF WAS TREATED DIFFERENTLY THAT SIMILARLY SITUATED PERSONS**

Similarly situated employees are required to be treated consistently by defendant work rules.  (Exhibit N)

-14-

Plaintiff also claims she was treated differently that similarly situated employees. She first points to Kathryn Bailey whose conduct was so extreme it is horrific compared to the allegation related to Plaintiff's private message.

Kathryn Bailey was given a five (5) days suspension; with counselling paid by the employer.   Bailey had violated two (2) major work rules which the employer's Senior Employee and Labor Relations Professional (II: 9, 10)  admitted created a hostile work environment.  (II: 33, 9 -  34, 25)

Defendant is certain to argue Plaintiff's overall record was worse than that of Bailey.   However, the conduct of Bailey was so severe Bailey was subject to immediate discharge without regard to her record.   (II: 34,22; Exhibit N)     Bailey was given favorable treatment for conduct involving use of the employer's name on Facebook; harassment of two (2) employees; including on the job.

Ososkie and Johnson were treated more favorably.   Each admits to coloring the Black Sambo doll.  Even though Plaintiff did not color the doll she was disciplined.   Lab Manager Keith Reynolds verified discipline would be justified against each person who colored the Black Sambo doll.  (Exhibit FF: 37, 4 – 13)   Despite knowing of the involvement of each, no action was taken against Ososkie or Johnson.

In addition, Darrin Johnson had a Facebook post (identifying the employer) in which he harassed Plaintiff through one of her Facebook friends.    No action against Johnson.

These different treatment allow the trier of fact to find unlawful discrimination.

-15-

## **TOTALITY OF CIRCUMSTANCES**

In evaluating the evidence in this matter the court must look at the totality of circumstances of the record evidence. The court must note Plaintiff's termination is the direct consequence of actions initiated by Janice Davis who expressed repeated racial animus, and declared the whistleblower "would be dealt with."

Prior to the Black Sambo doll the relationship between Plaintiff and Manager Davis:

> ". . . was fine. She actually came and talked to me quite a bit. . . .
> I don't think we had a bad relationship at all"   (EE: 75, 23 – 76, 3)

October, 2016 as Plaintiff is complaining to Keith Richards seeking a meeting in confidence with him, Richards notifies Ms. Davis who responds describing Plaintiff as a ". . . if you don't realize . . . . . . . . bad seed!!!"  (EE: 75, 14; Exhibit R)   Ms. Davis never referred to Plaintiff as a bad seed at anytime prior to the appearance of the Black Sambo doll.  (EE: 76, 15)

Ms. Davis embarked on a course of discrediting Plaintiff after  the whistleblowing began.   At her deposition of April 23, 2018, Plaintiff was confronted with mostly handwritten notes of alleged incidents dating November, 2016 through January, 2017. These alleged incidents were never presented to Plaintiff during her employment.  (AA-2: 138, 2 – 14)     These fabricated allegations generated in concert with Janice Davis were an integral of the reasons defendant shifted to from the discharge reason stated on the corrective action form.

It was Janice Davis who initiated action by Human Resources to terminate the employment of Plaintiff.   This was immediately after seeing the private message of Plaintiff which disclosed the Black Sambo doll was being taken to EEOC.

-16-

The evidence is sufficient to support a finding of retaliation and discrimination by defendant.

## THE COURT HAS SUBJECT MATTER JURISDICTION
## OVER ALL CLAIMS

Defendant argues this court lacks subject matter jurisdiction over the Title VII portion of Plaintiff's complaint.    Defendant contends Plaintiff did not adequately set forth mention of her hostile employment environment claim when filing her Charges of Discrimination.    Those charges and Plaintiff's submission are attached as Exhibit  Q.

Michigan does not require administrative processing pre-filing.  Accordingly, defendant is not challenging the jurisdiction of the court over the claims being asserted to the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101, et seq.

In page 3 of Exhibit Q written by Plaintiff included was the claim racially hostile environment.    The charges were not repeated verbatim.    Nevertheless the claim was before the EEOC.

The request to dismiss this claim should be denied.

## FRONT PAY

The defense contends this court should summarily deny front pay to Plaintiff should a verdict be returned in her favor.    The court has discretion to order reinstatement in lieu of front pay; should the court want to avoid front pay.

The case relied upon by the defense does not  apply to this case.   In the case cited by the defense, the court exercised it's discretion to deny front pay because the employment place in question would have closed leaving Plaintiff without employment. Those facts are not present in this case.

-17-

Defendant does not submit any affidavit from the interviewer of Plaintiff indicating Plaintiff would not have been hired.   Defendant's application only indicates Plaintiff may have been fired.

The simply isn't  adequately supported to allow the court to summarily denied front pay at this point in the proceedings.

Moreover, it cannot be said Plaintiff engaged in a material misrepresentation.

## <u>CONCLUSION</u>

This case is fact driven.   Defendant has only brought this motion pursuant to rule 56 of the Federal Rules of Civil Procedure which test the factual support for the allegations raised.   The motion lacks merit in its entirety, and should be denied in its entirety.

LAW OFFICES OF CHUI KAREGA

_____/s/Chui Karega_____
BY: CHUI KAREGA   (P27059)
Attorney for Plaintiff
19771 James Couzens Highway
Detroit, Michigan 48235-1937
(313) 864-0663
ck27059@msn.com

Dated: June 28, 2018

---

### STATEMENT OF SERVICE

**The undersigned certifies that a copy of the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses as directed on the pleadings on June 28, 2018 by:**

**[ ] US MAIL    ☐ FEDERAL EXPRESS      [x]  ECF Electronic Filing System**

**/s/    Chui Karega   .**
**CHUI KAREGA**

---