UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GABRIELLE WILLIAMS,

    Plaintiff,

v.

OAKWOOD HEALTHCARE, INC.
d/b/a BEAUMONT HOSPITAL–
DEARBORN,

    Defendant.

Case No. 2:17-cv-11381

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER GRANTING
## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [24]</u>

On May 1, 2017, Plaintiff Gabrielle Williams filed her complaint against her former employer, Defendant Oakwood Healthcare d/b/a Beaumont Hospital-Dearborn ("Beaumont"). ECF 1. Williams alleged retaliatory separation in violation of Michigan's Whistleblowers' Protection Act ("WPA"), Mich. Comp. Laws § 15.362, *et seq.*, hostile work environment in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and racial discrimination in violation of Title VII and Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, *et seq.* Defendant filed a motion for summary judgment. ECF 24. The Court reviewed the briefs and finds that a hearing is unnecessary. For the reasons below, the Court will grant the motion for summary judgment.

### BACKGROUND

Williams began working for Beaumont in December 2012 as a part-time laboratory technician. ECF 1, PgID 3. In July 2016, Williams switched to a role as a full-time phlebotomist. ECF 25, PgID 670.

1

In September 2016, Alicia Ososkie retrieved a white Beaumont doll ("Darrin doll"), *see, e.g.,* ECF 24-22, PgID 486; colored it black; wrote "Darrin" on the doll's shirt; and placed it on the desk where Darrin Johnson—her coworker, friend, and former love interest—worked. ECF 24-27, PgID 543–44, ECF 25-22, PgID 766–68. Darrin then "drew gym shoes" on his "little mini-me," "colored the bottom lip to be pink like [his]," and changed the eyes to be more slanted like his. ECF 25-23, PgID 774.[1]

Williams first saw the Darrin doll "towards the middle" of September 2016. ECF 24-26, PgID 526. Williams did not immediately complain to her supervisor, Phlebotomy Manager Janice Davis, or to Lab Director Keith Reynolds. ECF 24-26, PgID 526–27. In early October, however, Williams tried to contact Reynolds and Tim Vargas to express concern about the workplace environment. *Id.* at 530. On October 3, 2016, Williams anonymously removed the doll. *Id.* at 527, 530–31. That night, under the name "Angela Speed," Williams posted a photo of and commentary on the doll on Beaumont's Facebook page. *Id.* at 529; ECF 24-23, PgID 488.

Beaumont initiated an investigation into the Darrin doll. *See* ECF 24-24 (summarizing Beaumont's response to the incident). The investigation did not reveal who made the post. ECF 24-25, PgID 495. According to Williams, she was "threatened in third

---

[1] See ECF 24-22 for a color photo of the "Darrin doll." Notably, Darrin Johnson testified that the doll in the photo "was definitely changed" and that "whoever took this doll changed the whole mouth and made the mouth white all around. [The] doll wasn't like that when it was on the desk" the last time Johnson saw it. ECF 25-23, PgID 774. The parties do not dispute Johnson's testimony. The undisputed facts therefore establish that the color photo of the Darrin doll does not represent the doll's appearance during its display at Beaumont.

2

person by Janice Davis stating that whoever reported the doll was going to be dealt with." ECF 24-26, PgID 532.[2]

Williams alleges that Beaumont's inadequate response to her complaints about the workplace environment left her "with no alternative but to report" her issues to the appropriate regulatory and legal authorities, "which [she] prepared to do." ECF 1, PgID 3. Williams tried contacting lawyers. ECF 24-26, PgID 534. Between October and December 2016, Williams expected her coworker, Diedra Garrett, "to report [the Darrin doll] to the EEOC." *Id.* Garrett submitted an affidavit stating that she took the Darrin doll to the EEOC. ECF 25-6, PgID 701.

Then, on January 17, 2017, Williams posted a photo of the Darrin doll on her personal Facebook page and complained about the inadequacy of Beaumont's response. ECF 25-8. Another individual viewed the post, screenshot it, and sent it to Johnson. ECF 24-28, PgID 552. Johnson first posted on his Facebook wall and stated, "[r]ace has nothing to do" with the Darrin-doll incident and suggested that Williams "is trying to make a[n] issue out of nothing and stir up trouble that does not exist." ECF 24-40, PgID 609. He concluded by saying that Williams's comment was "all lies." *Id.*

Johnson then sent a message to Shyniece—a person who commented on Williams's post. ECF 24-28, PgID 552. In the message, Johnson said that Williams's post was a lie—because there was no cover up by Beaumont or race issue—and that Williams posted the comment "because she has been exposed for her laziness." ECF 25-10, PgID 711.

---

[2] Here, the reporting activity Williams references is her anonymous October 3, 2016 Facebook post about the Darrin doll. As discussed *infra*, that activity does not constitute "reporting" under the WPA.

3

In response to Johnson's message to Shyniece, Williams messaged Johnson's wife, Eboni. Williams asked, "do you know that your husband is letting [Beaumont] degrade him as a person?" and then commented about "his multiple affairs with these Caucasian women at work." ECF 25-11, PgID 713. Johnson complained to his supervisor—Janice Davis—about Williams's message to his wife. ECF 24-28, PgID 558.

On January 31, 2017, Beaumont suspended Williams pending an investigation into her messages to Johnson's wife. ECF 24-37, PgID 603. Then, on February 6, 2017, Beaumont terminated Williams because, after a workplace dispute, she "intentionally sought out a co-worker's wife on social media for the purpose of harassing the wife and co-worker [Darrin] by revealing personal information about [his] behavior and personal relationships with co-workers." ECF 24-41, PgID 611.

Williams then filed two charges of discrimination with the Michigan Department of Civil Rights and EEOC. The first—filed Feburary 13, 2017—claimed Beaumont terminated her for publicly complaining about racial discrimination. ECF 24-42, PgID 615. The second—filed March 8, 2017—claimed Beaumont terminated her for allegedly violating a work rule by posting about the Darrin doll on social media. ECF 24-43, PgID 617. Williams received right-to-sue letters on February 16, 2017 and March 14, 2017, and she filed her complaint on May 1, 2017.

**STANDARD OF REVIEW**

Summary judgment is proper if the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material for purposes of summary judgment if its resolution would establish or refute an "essential element[] of a cause of action or defense asserted by the

4

parties[.]" *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing Black's Law Dictionary 881 (6th ed. 1979)).

In considering a motion for summary judgment, the Court must view the facts and draw all inferences in the light most favorable to the non-moving party. *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 848 (6th Cir. 2016). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). And although the Court may not make credibility judgments or weigh the evidence, *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015), a mere "scintilla" of evidence is insufficient to survive summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff," *Anderson*, 477 U.S. at 252.

**DISCUSSION**

I. Michigan's Whistleblowers' Protection Act

The WPA prohibits an employer from discharging an employee "because the employee, or a person acting on behalf of the employee, reports or is about to report" a violation or suspected violation of the law. Mich. Comp. Laws § 15.362. When presented with circumstantial evidence, the Court will review WPA claims under the "'shifting burdens framework utilized in retaliatory discharge actions'" employed in other Michigan civil rights statutes. *Roulston v. Tendercare (Mich.), Inc.*, 239 Mich. App. 270, 280 (2000) (citing *Anzaldua v. Band*, 216 Mich. App. 561, 580 (1996)).[3] The framework requires a

---

[3] Williams avers that she presented direct evidence of unlawful retaliation. In particular, Williams points to Janice Davis's comment that the person "who reported the doll was going to be dealt with." ECF 24-26, PgID 532. An anonymous comment on Facebook

5

plaintiff to first establish a prima facie case. Then, the defendant will bear the burden of producing evidence to establish a legitimate reason for the adverse action. If the defendant succeeds, the plaintiff carries the final burden to prove that the proffered legitimate reason was merely a pretext. *Id.* at 280–81.

### A. Plaintiff Fails Her Prima Facie Showing

First, a plaintiff must establish the three elements of the prima facie case: "(1) the plaintiff was engaged in protected activity as defined by the Whistleblowers' Protection Act, (2) the plaintiff was discharged, and (3) a causal connection existed between the protected activity and the discharge." *Shallal v. Catholic Social Servs. of Wayne Cty.*, 455 Mich. 604, 610 (1997) (citing *Terzano v. Wayne Cty.*, 216 Mich. App. 522, 526 (1996)). The parties dispute both the first and third elements.

#### 1. Plaintiff did not engage in protected activity.

The WPA defines "protected activity," in relevant part, as "(1) reporting to a public body a violation of a law, regulation or rule;" or "(2) being about to report such a violation to a public body[.]" *Chandler v. Dowell Schlumberger, Inc.*, 456 Mich. 395, 399 (1998) (citing Mich. Comp. Laws § 15.362). At minimum, an employee's protected activity must have been a "motivating factor" in the employer's decision to discharge her. *Debano-Griffin v. Lake Cty.*, 493 Mich. 167, 176 (2013). Finally, plaintiff must show "by clear and convincing evidence that" she or someone acting on her behalf "was about to report,

---

about the doll does not qualify as reporting to a public body within the meaning of the WPA because Facebook does not qualify as a "public body" under the WPA. *See* Mich. Comp. Laws § 15.361(1)(d). Davis allegedly made the comment after Williams posted anonymously under the name "Angela Speed". ECF 24-26, PgID 529, 531–32. Beaumont never determined who made the anonymous post. ECF 24-25, PgID 495.

6

verbally or in writing, a violation or a suspected violation of a law[.]" Mich. Comp. Laws § 15.363(4).[4] *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986) ("[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden.").

Williams has identified two different alleged protected activities: (1) "contacting and retaining an attorney to further the reporting effort" and (2) Diedra Garrett's "contacting the [EEOC]" in concert with Williams. ECF 25, PgID 677.[5]

First, Plaintiff has provided no evidence—let alone clear and convincing evidence—that a report of an actual or suspected legal violation accompanied her attempts to contact and retain an attorney. Furthermore, her first report to the EEOC post-dated her termination and did not address the Darrin doll. *See* ECF 25-18, PgID 741.

Second, Plaintiff has not provided clear and convincing evidence that Diedra Garrett actually reported the Darrin doll to the EEOC. Garrett submitted an affidavit which declared that she took the Darrin doll to the EEOC. ECF 25-6, PgID 701. Garrett's affidavit—unaccompanied by other testimony or documentary evidence—is insufficient to satisfy the clear-and-convincing-evidence standard that she reported the Darrin doll to the EEOC. *See Jennings v. Cty. of Washtenaw*, 475 F. Supp. 2d 692, 712 (E.D. Mich. 2007), *abrogation on other grounds recognized by Talhelm v. ABF Freight Sys., Inc.*, 364 F. App'x 176, 183 n.2 (6th Cir. 2010) ("A single unsubstantiated, uncorroborated

---

[4] Plaintiff asserts—without legal citation—that the clear-and-convincing-evidence standard applies "only if the trier of fact finds Plaintiff was not involved in 'reporting' but instead was 'about to report.'" ECF 25, PgID 677. The plain language of the statute defeats Plaintiff's assertion.

[5] Plaintiff did not complain about the Darrin doll to an outside public agency on her own. ECF 24-26, PgID 534.

7

deposition statement by the Plaintiff does not satisfy her evidentiary burden under the WPA to show by 'clear and convincing evidence' that she was about to report a suspected safety violation to a public body before she was terminated."); *cf. Shallal*, 455 Mich. at 613–14 (finding clear and convincing evidence existed when plaintiff's testimony was accompanied by calendar entries and the names of people to whom she indicated a desire to report).

Third, even if Garrett reported the Darrin doll to the EEOC, Plaintiff has not offered clear and convincing evidence that Garrett reported the doll "on behalf" of Plaintiff. Garrett's affidavit does not indicate she reported the doll on Williams's behalf. *See* ECF 25-6. Williams's own deposition testimony was only that Garrett was supposed to report the Darrin doll, but does not attest that Garrett was to do so on Williams's behalf. *See* ECF 24-26, PgID 534. For each of those reasons, Plaintiff failed to demonstrate by clear and convincing evidence that she engaged in protected activity covered by the WPA.

### 2. A causal connection does not exist.

Even if Plaintiff engaged in protected activity, she has failed to demonstrate a causal connection between any alleged reporting and her termination. Plaintiff avers only that immediately upon learning of Plaintiff's January 17 message to Eboni, Beaumont suspended her and eventually terminated her. ECF 25, PgID 679. The January 17 message stated, in part, "one of our sister's [sic] took the [Darrin] doll to HR Administration and the [EEOC][.]" ECF 25-11, PgID 713. Plaintiff contends that the temporal proximity alone is sufficient to show a causal connection between the report and her termination.

The argument fails. Under Michigan law, "something more than a temporal connection between protected conduct and an adverse employment action is required to

show causation[.]" *Bolish v. Miller Park Townhomes, L.L.C.*, Docket No. 310100, 2014 WL 60329, at *6 (Mich. Ct. App. Jan. 2, 2014) (citation and internal marks omitted). Because Plaintiff does not point to anything other than temporal proximity, she failed to show a causal connection. She therefore fails to make her prima facie showing of a violation of the WPA.

II.  Title VII Claims Generally

Title VII creates two different types of actions: (1) discrete discriminatory acts, and (2) claims alleging a hostile work environment. *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 993–94 (6th Cir. 2009) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Morgan*, 536 U.S. at 114. In contrast, a hostile-work-environment claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117 (quoting 42 U.S.C. § 2000e–5(e)(1)). With that distinction in mind, the Court will address the Title VII counts in turn.

III.  Title VII Hostile Work Environment

Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff's hostile-work-environment claim, that the claim is untimely, and that, regardless, Plaintiff failed to show the conduct was sufficiently severe or pervasive to satisfy a hostile-work-environment claim.

*A. The Court has subject matter jurisdiction.*

Defendant argues that the Court lacks subject matter jurisdiction because Plaintiff's hostile-work-environment claim could not be "'reasonably expected to grow out

of' the EEOC charge." ECF 24, PgID 417 (quoting *Strouss v. Mich. Dep't of Corrs.*, 250 F.3d 336, 342 (6th Cir. 2001).

The argument fails. Plaintiff attached the EEOC charges as exhibits to her response. Included in the exhibits is a typewritten page on which Plaintiff states she was "subject to a hostile work environment" when the Darrin doll was displayed at Beaumont. ECF 25-18, PgID 743.[6] Plaintiff's hostile-work-environment claim could be reasonably expected to grow out of the EEOC charge.

*B. The Claim is Timely.*

Defendant's timeliness argument fails for similar reasons. Defendant argues, correctly, that if only 2015 events contributed to a hostile work environment, the events occurred well beyond the 300-day requirement. *See* 29 U.S.C. § 626(d)(1)(B) (requiring a charge to be filed "within 300 days after the alleged unlawful practice occurred"). If one act contributing to the hostile-work-environment claim falls within the 300-day period, however, the Court may consider all related conduct. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). Plaintiff's exhibit containing the typewritten addition to the EEOC charge references the Darrin doll—which was present at Beaumont until October 3, 2016—as part of Beaumont's hostile work environment. Plaintiff filed her complaint within 300 days of October 3, 2016, so Plaintiff's claim is timely.

---

[6] Defendant's EEOC charge exhibits do not include the typewritten page. *See* ECF 24-42, 24-43. Plaintiff's exhibit with the typewritten page clearly rebuts Defendant's jurisdictional argument. Defendant, however, renewed its jurisdictional argument in its reply brief without any reference to the Plaintiff's exhibit contradicting the jurisdictional claim. *See* ECF 26, PgID 798.

Plaintiff's exhibit contains a signature significantly different from the signatures on the EEOC charges and does not have an EEOC stamp on it. At best, the exhibit is highly suspect. But, again, Defendant did not dispute it. And, regardless, at the summary judgment stage the Court must construe facts in the light most favorable to the plaintiff.

*C. Plaintiff Fails Her Prima Facie Showing.*

To succeed on a claim of a racially hostile work environment, a plaintiff must demonstrate that

> (1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act.

*Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011) (citing *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1078–79 (6th Cir. 1999)).

The Sixth Circuit has established a shifting standard for the fifth element. If the harasser is a supervisor, the employer is liable if it "failed to take reasonable care to prevent and correct any harassing behavior." *Wade v. Automation Pers. Servs., Inc.*, 612 F. App'x 291, 296 (6th Cir. 2015) (citing *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560–61 (6th Cir. 1999)). If the harasser is a coworker, however, then the employer is liable if it "knew or should have known of the conduct and failed to take prompt and appropriate corrective action." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 307 (6th Cir. 2016) (citing *E.E.O.C. v. Harbert–Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir. 2001).

Additionally, the plaintiff must show that she "perceived the work environment as hostile" and that a "reasonable person would have found it hostile or abusive as well." *Smith*, 813 F.3d at 309 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)). The parties dispute the fourth and fifth elements.

    1. Whether harassment was sufficiently severe or pervasive.

At summary judgment, the Court considers the totality of the circumstances to determine whether harassment was "sufficiently severe or pervasive to alter the

conditions of [] employment and create an abusive working environment." *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017) (quoting *Williams*, 643 F.3d at 512). The totality of the circumstances includes "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Smith*, 813 F.3d at 309 (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)).

Plaintiff identifies three types of conduct that contributed to the allegedly hostile work environment at Beaumont. First, Williams directs the Court to the existence of the Darrin doll. ECF 1, PgID 6. On one occasion, Diedra Garrett observed Janice Davis pick up the Darrin doll, play with it, and refer to it by a black lab employee's name. ECF 25-6, PgID 701. On a different occasion, she saw a lab employee "laughing and seemingly making fun of the doll" in a foreign language that she did not understand. *Id.*

Second, Plaintiff's response to the summary judgment motion identifies a 2015 incident involving Beaumont employee, Katie Bailey. Bailey posted disparaging comments on social media using inflammatory language about Ososkie and Johnson.[7] *See* 25-2–25-5. Garrett's affidavit suggests that Beaumont employees knew of the incident and were "outraged" by Beaumont's response to Bailey's posts. *See* ECF 25-6, PgID 700. Although Williams never saw the posts until Bailey's deposition in 2018, she testified that she had previously heard about the incident. ECF 24-26, PgID 538.

---

[7] Apparently, Bailey dated Alicia Ososkie until Ososkie left Bailey for Darrin Johnson. Bailey posted the comments because of Ososkie's infidelity.

Finally, Garrett stated that an environment of racial hostility "continues to the present." ECF 25-6, PgIF 701. As evidence of that hostility, Garrett described several events in which a white coworker referred to her as a "bitch" and made disparaging comments about her because she is black. *Id.* at 700. The Court will now consider the totality of the circumstances.

### a. Frequency of incidents.

First, the Bailey incident occurred in 2015, the Darrin doll was present from mid-September to October 3, 2016, and Garrett's experiences occurred in May and June 2016 and May 2017. The evidence demonstrates that problematic events occurred once or twice a year. This factor weighs in favor of not finding a hostile work environment.

### b. Severity and non-physical nature of harassment.

Second, the Darrin doll, and Janice Davis's interactions with the doll or the other employees unknown comments are not severe. The conduct may be offensive, but it is not sufficiently severe. *See, e.g. Williams*, 643 F.3d at 513 (finding that a white workers comments "calling Jesse Jackson and Al Sharpton 'monkeys' and saying that black people should 'go back to where [they] came from'" were "insensitive, ignorant, and bigoted," but not severe) (brackets in original).

Bailey's posts and Garrett's experiences, on the other hand, contain severe language, but they are not physically threatening or humiliating. Bailey's use of the phrase "fuck you," and the words "nigger" and "bitch" are inappropriate, severe, and seriously offensive utterances. So too are Garrett's coworkers' use of the word "bitch." They are not, however, physically threatening or humiliating and thus "more closely resemble a 'mere offensive utterance[.]'" *Williams*, 643 F.3d at 513. The severity of the comments

weighs in favor of finding a hostile work environment, but the non-physical nature of the harassment weighs in favor of not finding one.

c. Interference with employee's performance.

Finally, there is no evidence in the record indicating that the alleged conduct affected Williams's or any other employee's performance. This consideration, therefore, weighs in favor of not finding a hostile work environment.

Given the totality of the circumstances, these events are not sufficiently severe or pervasive to constitute a hostile work environment.

2. Beaumont's liability.

Assuming arguendo that the complained-of conduct were severe and pervasive, Beaumont is not liable. An employer is liable if it knew or should have known of discriminatory conduct but failed to act. If the harasser is a supervisor, the employer must have taken preventative and corrective action. If the harasser is a coworker, the employer must have taken prompt corrective action.

Here, Beaumont responded to Bailey's outburst by suspending her for five days, ECF 25-21, PgID 762, and provided her with counseling for anger management and sensitivity training, ECF 24-46, PgID 655–56. To avoid liability for a coworker who engages in harassment, an employer must only take prompt remedial action, which Beaumont did.

Beaumont became aware of the Darrin doll—created by Williams's coworker, Ososkie—on October 4, 2016 when Williams anonymously posted a photo of the doll.[8]

---

[8] Alicia Ososkie testified that she never told anyone that she made the Darrin doll; Beaumont therefore did not know until the litigation was underway who created the Darrin doll. ECF 24-27, PgID 546.

14

Beaumont's response included checking for the Darrin doll (and other altered dolls); removing any altered dolls; and introducing a positive teamwork training, ECF 24-30, conducting HR visits to each department, ECF 24-31, and providing a presentation on preventing unlawful harassment, ECF 24-32. *See* ECF 24-33 (chronology of Beaumont's response to the "doll incident"). Despite not knowing which employee created the Darrin doll, Beaumont took prompt remedial action, which protects it from liability.

Moreover, Beaumont disciplined Janice Davis—the phlebotomy laboratory manager—when it learned that she knew of the Darrin doll but failed to take adequate action. ECF 24-34, PgID 597 (indicating Davis "exhibited a lack of sensitivity to cultural issues" by failing to respond appropriately to an employee incident). Beaumont, therefore, took prompt remedial action regarding a supervisor's alleged misconduct.

With a supervisor, however, Beaumont must also demonstrate that it took appropriate preventative measures. To that end, Beaumont had adopted an HR policy and procedure describing its equal opportunity goals, ECF 24-19, and educating employees about harassment in the workplace, ECF 24-20. Moreover, Beaumont instituted a "Problem Resolution Procedure," to address potential workplace issues, ECF 24-21. Beaumont took adequate preventative action, therefore, to preclude harassing behavior in the workplace.

Beaumont's prompt remedial action of coworker misconduct, and preventative and remedial action for supervisor misconduct, protects it from liability for the alleged hostile work environment.

IV.  Title VII Racial Discrimination Claim

The Court will review Plaintiff's claim that Beaumont terminated her because of her race under the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[9] First, Plaintiff must prove the prima facie case of discrimination. Second, the Defendant must proffer a legitimate, non-discriminatory reason for plaintiff's termination. Finally, Plaintiff must offer evidence tending to show that the Defendant's proffered reason is a mere pretext for discrimination. *See Peeples v. City of Detroit*, 891 F.3d 622, 634 (6th Cir. 2018).

*A. The Prima Facie Case*

Plaintiff must "prove [the] four elements" of the prima facie case: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for her position; and (4) she was replaced by someone outside the protected class or she was treated differently than similarly-situated, non-protected employees. *Id.* (citing *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)). The Court addresses the third and fourth elements.

1. Williams's Qualifications for Her Position.

When considering a plaintiff's qualifications for a position, the Court must examine the plaintiff's evidence of qualification "independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

---

[9] Plaintiff does not present direct evidence that Beaumont terminated her because of her race.

16

Here, Defendant avers that Williams was not qualified for the position because of multiple offenses that prompted her termination "consistent with its progressive discipline system." ECF 24, PgID 426. Defendant conflates its proffered legitimate, non-discriminatory reason for Williams's termination with whether she was qualified for employment. Despite Williams's alleged misconduct, no other evidence suggests she was unqualified for employment. To the contrary, Williams worked for four years at Beaumont, earned a promotion from a part-time technician to full-time phlebotomist, and received certification as a phlebotomist. Williams, therefore, was qualified for the position.

2. Similarly situated employees.

Plaintiff must demonstrate that Beaumont treated her differently than "similarly situated nonminority employees." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016) (citing *Mitchell v. Toldeo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). To make her showing, Plaintiff must demonstrate that any comparators are "similarly situated in all relevant respects and ha[ve] engaged in acts of comparable seriousness." *Tennial*, 840 F.3d at 304 (citing *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012)). The plaintiff and her comparators must be "nearly identical" in relevant aspects of their respective employment situations. *O'Donnell v. City of Cleveland*, 838 F.3d 718, 727 (6th Cir. 2016) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). For example, the plaintiff and her comparable employees "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* Plaintiff

17

identifies three different potential comparators: Katie Bailey, Alicia Ososkie, and Darrin Johnson. None is a sufficient comparator.

First, Darrin Johnson is a minority employee and therefore not an appropriate comparator. Second, Plaintiff does not show that Ososkie is a nonminority employee. Moreover, Beaumont could not discipline Ososkie because it did not know she created the Darrin doll. *See* ECF 24-27, PgID 546 (testimony that Ososkie did not disclose to anyone that she created the Darrin doll). Ososkie is also not an appropriate comparator.

Finally, Katie Bailey is a nonminority employee who engaged in similar conduct; namely, Bailey posted inappropriate messages publicly on social media. Although Bailey and Williams engaged in similar conduct, they differed in two significant respects. First, Beaumont previously suspended Williams whereas Bailey had no disciplinary history. *Compare* ECF 24-13, PgID 458 (noting Williams received a three-day suspension for a verbal altercation with a patient's granddaughter) *with* ECF 24-46, PgID 657 (containing Bailey's testimony that Beaumont had never disciplined her before her 2015 social media incident). Second, Williams and Bailey worked in different locations with different supervisors. *See* ECF 24-26, PgID 538 (Plaintiff testifying that Bailey worked at a different location, but would sometimes substitute at Beaumont as needed). Bailey, therefore, is not an appropriate comparator.

V.  <u>Elliott-Larsen Civil Rights Act Racial Discrimination Claim</u>

Federal courts evaluate claims brought pursuant to Michigan's Elliott-Larsen Civil Rights Act under the same framework as Title VII claims. *See Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (citing *Hall v. State Farm Ins. Co.*, 18 F. Supp. 2d 751, 766 (E.D. Mich. 1998)). The Court, therefore, will employ the *McDonnell Douglas* burden-

shifting framework for discrimination claims based upon circumstantial evidence. *In re Rodriguez*, 487 F.3d 1001, 1008 (6th Cir. 2007) (citing *Hazle v. Ford Motor Co.*, 464 Mich. 456 (2001) and *Humenny*, 390 F.3d at 906).

Plaintiff's state-law racial discrimination claim fails for the same reason her Title VII racial discrimination claim failed: she did not show that Beaumont treated her differently than similarly situated individuals outside the protected class.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion for summary judgment [24] is **GRANTED**.

**SO ORDERED**.

                                    s/ Stephen J. Murphy, III
                                    STEPHEN J. MURPHY, III
                                    United States District Judge

Dated: September 4, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 4, 2018, by electronic and/or ordinary mail.

                                    s/ David Parker
                                    Case Manager